M. S. SMALLEY v. L. R. YATES, *as Mayor of Hiawatha, et al.*

CITY BONDS *for Water Works—Valid Sale.* Where, upon an election properly called and held, the mayor and council of a city of the second class are given authority, by a majority of the votes cast at such election, to issue bonds to secure the erection and operation of water works under the provisions of chapter 115*b*, Comp. Laws of 1885, pp. 1003, 1004, such officials may sell and issue the bonds, if they deem it advisable, by a resolution of the city council properly passed therefor. (*Smalley v. Yates*, 36 Kas. 519.)

*Original Proceeding in Mandamus.*

THE opinion, filed at the session of the court in May, 1889, contains a sufficient statement of the case.

*Rossington, Smith & Dallas,* for plaintiff.

*R. F. Buckles,* and *Johnson, Martin & Keeler,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This case was pending at the January term for 1887, upon a motion to quash the alternative writ, and an opinion was filed. (36 Kas. 519.) It is now to be disposed of upon its merits.

The city of Hiawatha is a city of the second class, and on the 29th day of November, 1886, the mayor and the city council passed an ordinance calling a special election for December 28, 1886, to submit to the electors of the city the question of issuing $50,000 of city bonds for the purpose of raising money to construct water works; the bonds were to run thirty years, at not exceeding six per cent. interest. The election was held, and a majority of the electors voted in favor of issuing the bonds. On the 7th of February, 1887, the mayor and the city council passed an ordinance providing for the construction of the water works, and for the issue and sale of the bonds of the city to raise money to pay for the same. Section 14 of the ordinance reads as follows:

"The clerk shall give notice that sealed proposals shall be received at his office until 8 o'clock P. M., February 21, 1887, at which time the bids shall be opened and considered by the council in regular session, for the amount of bonds issued under this ordinance, and that each bidder shall accompany his bid with the written guarantee of some reliable banking firm that he makes his bid in good faith, and not in collusion with any other bidder."

Section 15 reads:

"The bonds shall be sold to the highest and best bidder who can give the guarantee above referred to to the satisfaction of the mayor and council: *Provided, however,* That the right to reject any and all bids is hereby reserved."

On the 21st of February, 1887, the city council met to open

the bids for the bonds, but no sealed bids were found to be filed. Thereupon the council by resolution decided to offer the bonds at public auction. A. E. Spitzer bid $52,700 for $50,000 of the city bonds, running thirty years and bearing six per cent. interest. M. S. Smalley stated he would give $49,000 for the $50,000 of city bonds, the same to bear interest at five and one-half per cent. The council then rejected these bids, and offered the bonds on a basis of five and one-half per cent. interest to the highest bidder. M. S. Smalley bid $49,169.50, he being the highest bidder. Upon motion, his bid was accepted, and the bonds were declared sold to him for the amount thereof. The council then adjourned until February 28. On that day it met pursuant to adjournment, and, upon motion, the proceedings of the meeting of February 21, in selling the bonds to Smalley, were revoked. On the first day of March, 1887, the council passed a new ordinance, amending § 14 of the old ordinance, and providing a different mode for selling the bonds; and on the 15th day of March, 1887, $50,000 of bonds of the city, bearing six per cent. interest, were sold to Spitzer & Company for $52,906.85, and afterward issued to them.

When this case was here upon the motion to quash the alternative writ, we said:

"The authority given to issue bonds bearing interest at a rate not to exceed six per cent. per annum, empowers the defendants to issue bonds bearing interest at the rate of five and one-half per cent. Ordinarily, the authorized officials of a municipal corporation may bind it by resolution, or by vote clothe its officers with power to act for it. Our attention has not been called to any section of the 'act to incorporate cities of the second class' prohibiting the sale of bonds, or other personal property of a city, by resolution. In our examination of the statute, we have found no such limitation or restriction; therefore the contract entered into between the parties to this action, upon the resolution of the city council, as set forth in the writ, is valid." (*Smalley v. Yates*, 36 Kas. 519.)

Our attention is now called to § 42, ch. 19, Comp. Laws of

1885, being the act to incorporate cities of the second class. This reads:

"The mayor and council shall have no power to appropriate or issue any scrip, or draw any order on the treasurer for any money, unless the same has been appropriated by ordinance or ordered in pursuance of some object provided by law: *Provided,* That no ordinance providing for the borrowing of moneys, levying taxes, or appropriating money, shall be of any validity unless a majority of all the councilmen elected shall vote for such ordinance; and such vote shall be taken by yeas and nays, and the same shall be entered upon the record of proceedings of the council."

It is claimed that the sole effect of the special election of December 28, 1886, was to remove the limitation imposed by the statute upon the power of the city to issue bonds; and that after the election resulted in favor of the issuance of the bonds, the mode of exercising their issue and sale was to be controlled by the provisions of said chapter nineteen; that, as the issuance of the bonds by the city was the borrowing of money, said § 42 prescribes their issuance by ordinance only.

We cannot agree with this claim, because, in our view, the bonds were authorized to be issued under the provisions of chapter 115*b*, Comp. Laws of 1885, pp. 1003, 1004. Section 3 of said chapter 115*b* reads:

"That to defray the cost of such water works, the council is authorized and empowered to issue the bonds of the city, the interest on the amount issued not to exceed one per centum of the taxable valuation thereof, as shown by the last preceding assessments, such bonds to bear interest not exceeding eight per cent. per annum, and payable at such times and places as the council may direct. Such bonds shall be signed by the mayor of the city, and countersigned by the clerk thereof, and have coupons or interest warrants attached."

And § 6 of said chapter 115*b* provides:

"That before any of the bonds provided for by this act shall be issued, the city council shall submit the question of such issue to the electors of the city, at any general or special election to be called for that purpose, by the council, of which election at least twenty days' notice shall be given, by publica-

tion in at least one newspaper published in said city. The election shall be governed in all respects as other elections; and if a majority of the votes cast at any such election be in favor of the issue of bonds, as provided in the notice of such election, then the council may issue them, as it may deem advisable, to secure the erection and operation of said water works."

Said § 6 commits the decision of the issuance of the bonds to the council "as it may deem advisable to secure the erection and operation of said water works;" and as the statute is silent as to the mode, the decision may be evidenced by a resolution. A resolution has ordinarily the same effect as an ordinance, and both are legislative acts; but a resolution is an order of a special and temporary character. An ordinance prescribes a permanent rule of conduct or government. A sale of city bonds may be regarded as an executive and administrative act.

On February 21, 1887, after the ordinance providing for the reception of sealed bids had been disposed of by the failure of any bids being offered, then the mayor and city council had the right to sell the bonds by resolution, if they deemed such a mode advisable. They did deem this mode advisable, and made the sale to the plaintiff, who now claims the same. The bonds were not to be issued under any express provision of the act incorporating cities of the second class, but were to be issued under the provisions of chapter 115b. In the notice for the special election, called December 28, 1886, to vote upon the issuance of bonds for the erection of water works, nothing was stated therein about the bonds being sold or disposed of by ordinance. The notice, however, did recite "that the bonds were to be sold for the purpose of raising funds for the erection of permanent water works for the use of the city of Hiawatha." Of course the mayor and city council could not limit the provisions of said chapter 115b by any ordinance or resolution prior to the vote in favor of the bonds; and after the ordinance providing for receiving sealed bids had wholly failed of its purpose, there was nothing for the council to do except to dispose of the bonds by resolution, or adopt a new

ordinance authorizing their sale.   The mayor and city council deemed it advisable to sell and dispose of the bonds by resolution.   Subsequently they adopted a new ordinance, providing for a different mode of selling the bonds; but this ordinance was too late.   The mayor and city council had already exhausted their power.   The bonds voted had been sold, and the plaintiff was entitled to have them issued to him.   As Spitzer & Co., or their authorized agents were present when the bonds were sold to the plaintiff, on February 21st, and had full notice of the sale, they were not *bona fide* purchasers. (*Meixell v. Kirkpatrick*, 33 Kas. 282.)

The subsequent issuance of the bonds by the mayor and city council to Spitzer & Company was in disregard of the contract with the plaintiff, and in violation of his rights in the premises; therefore the action of the mayor and city council in adopting, on the 1st day of March, 1887, a new ordinance, providing for the sale of the bonds and the issuance of the same to Spitzer & Company, who had full notice of the rights of the plaintiff, cannot affect or prejudice his purchase of the bonds on February 21st.

No valid excuse is presented why the mayor and city council should not carry out in good faith the contract they made with the plaintiff, and receive his money and issue to him the bonds according to the terms of their contract; therefore a peremptory writ will issue as prayed for.

All the Justices concurring.