[No. 11262.    Department Two.    July 23, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Grant Smith & Company, Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — GRADING CONTRACT — CONSTRUCTION—PAYMENTS—BONDS—ACCRUED INTEREST. Where a grading contract provided that there should be delivered to the contractors bonds in the face amount of seventy per cent of the work done during the preceding calendar month as shown by monthly estimates, the contractors are not entitled to interest accrued between the date of the bonds and their delivery, although a budget ordinance directed payments to the contractor of bonds in the principal sum of seventy per cent of the monthly estimates and such additional sum as may be required to pay all interest that may legally accrue; since the contract required payment for work in bonds at their face value or par and not at a premium or bonus equal to the accrued interest at the time of delivery.

SAME—PAYMENTS BY CITY—AUTHORITY—MISTAKE—OVERPAYMENTS —RECOVERY—ESTOPPEL. In such a case, the fact that city officials delivered the bonds to contractors without detaching the coupons for interest accrued before delivery, does not estop the city from recovering the overpayment, or vest any right thereto in the contractors, on the theory that it was a voluntary payment or made under a mere mistake of law; since the payments were made by officials without authority and in violation of law.

JUDGMENTS—RES JUDICATA—MATTERS CONCLUDED. A judgment in favor of contractors in a mandamus proceeding determining merely that the contractors were entitled to be paid for additional yardage required in street grading work, is not *res judicata* in a subsequent action to determine the amount due to the contractors on final com-

[1]Reported in 133 Pac. 1005.

pletion of the work, for which an assessment should be levied, nor a bar to an offset by the city for moneys in the hands of the contractors by reason of overpayments during the progress of the work, where that question was not litigated in the former action.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 25, 1913, in favor of the relators, in mandamus proceedings to compel the levy of a supplemental local improvement assessment. Reversed.

*James E. Bradford* and *Howard A. Hanson* (*James Kiefer*, of counsel), for appellant.

*Preston & Thorgrimson* and *Turner & Hartge*, for respondents.

MORRIS, J.—In this action, respondents, the contractors in the local improvement known as the Denny Hill regrade, sought to compel the city to levy supplemental reassessments upon private property in the amount of $76,112.19. To this demand the city pleaded an offset of $47,696.11 accrued interest on certain bonds delivered to the contractors, and offered to levy further assessments to make up the difference between these two amounts. This offer was rejected by the court below, and judgment went for the respondents as prayed for.

The facts material to the inquiry here are about as follows: The city, having determined upon the improvement, which consisted in the regrading of portions of several parallel avenues, and comprising locally what is known as the Denny Hill regrade, called for bids under which the contract was let to the respondents. This contract provided that the contractors should slope back upon private property to the extent of one to one and remove the earth involved in such slope as part of the cost and expense of the regrading. The regrade involved various deep cuts, and the removal of the remaining earth upon the private property to the approximate new level of the streets. To this end, a provision was inserted in the contract, by which the contractors bound them-

selves to excavate the earth from any private property in the district when so requested by the property owner at the same rate per cubic yard as was involved in the contract with the city. Under this provision, the contractors, in a large number of cases, entered into contracts with various owners of abutting property to remove the earth on such private property "so as to bring the level thereof to an even grade with the street or streets abutting the same, as established by city ordinance."

After commencing work upon this contract, and when approximately 26 per cent of the work had been completed, the city confirmed an assessment roll for the estimated cost and the expense of the improvement, and paid to the contractors upon this roll, in March 1909, about $62,000. On May 10, 1909, bonds in the principal sum of $741,757.01 were drawn up and dated by the city comptroller, for delivery to the contractors from time to time in various amounts, as called for by monthly estimates. These bonds, which under the law were obligations against the local improvement district but not against the city as a whole, were payable ten years from and after the date of their issue, with interest at the rate of six per cent per annum; each bond having attached thereto ten coupons representing each year's interest on the bond. Under the terms of the contract, it was provided that no claim should be made for any portion of the contract price until, in pursuance of law, charter, and ordinance, the bonds could legally be issued.

The contractors thereafter assumed the financing of the improvement, up to such time as under this provision of the contract the bonds could be legally issued. Each month after the commencement of the work, a monthly engineer's estimate was made up of the work during the preceding calendar month. Upon this estimate, the contractor received a warrant for seventy per cent of the work; some of these warrants being redeemed in March, 1909, from the first proceeds of collection upon the assessment roll amounting to the cash

payment of $62,000.  Those warrants not redeemed in this manner were exchanged for bonds later.

It was further provided in the contract that, after the confirmation of the assessment roll, there should be delivered to the contractors bonds in the face amount of seventy per cent of the work done during the preceding calendar month, as shown by the monthly estimate.  This amount was due and payable on or about the 25th of each month.  To these bonds, so delivered from time to time, were attached all interest coupons; and at the time of the several monthly deliveries, certain interest had accrued from the date of the bonds, May 10, 1909.  It was further provided that thirty per cent of the cost and expense of the amount should be reserved by the city for the protection of lien claimants.  This reserve was withheld from each monthly payment, and under the contract did not become payable until thirty days after official notification to the city comptroller that the contract had been completed and accepted.  This thirty per cent reserve became payable to the contractors on April 25, 1911, and bonds therefor were delivered to the contractors on April 29, 1911.  The accrued interest upon these bonds so delivered amounted to $31,090.44.  This item, together with the accrued interest upon the several monthly estimates subsequent to May 10, 1909, amounted to $47,696.11.  It is the accrued interest in this latter amount that the city urged as an offset to the demand of the contractors that the city take necessary steps to levy assessments in the full sum of $76,112.19.

In considering the payment of the various monthly estimates, the city council passed a monthly budget ordinance ordering payments to the various local improvement contractors operating under the several contracts throughout the city.  This ordinance directed the payments to the contractor of bonds in the principal sum of seventy per cent of the monthly estimate, and provided for the payment of such additional sum as "may be required to pay all interest that may

legally accrue on the warrants and bonds under this ordinance."

Our attention has not been called to any other provision of statute, charter, ordinance, or contract for the delivery to the contractor of coupons representing the interest which had accrued between the date of the bonds and their delivery. It is the city's position now that such delivery was without authority, and that the contractors have already received on account of the improvement this sum of $47,696.11, representing the accrued interest, to which they were not entitled, and that such payment is in excess of the cost and expense of the improvement; and that the city is without power to assess private property for more than the cost and expense of the improvement, and therefore the city is entitled in this proceeding to offset the amount of such accrued interest. Other material facts necessary to a proper understanding of the situation here involved may be referred to.

In *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106, it was held that property receiving damages in condemnation proceedings under the old law, where damages were offset against all benefits and a verdict returned for the excess, was exempt from special assessments, either upon the condemnation assessment roll or upon the local improvement assessment roll. This holding had a direct effect upon a number of assessments in the Denny Hill local improvement assessment roll, and apparently involved approximately $70,000 of such assessments. The city, seeking to relieve itself from this situation, directed the contractors to slope back upon private property only to the extent of three-fourths to one, instead of one to one, as provided for in the original contract, leaving the wedge thus created to be removed at the cost of the property owner. Under this modification of the contract, the contractors proceeded with the improvement and sought, and in many cases did, collect from the several property owners who had signed private agreements for the removal of the earth upon their lots, an amount represent-

ing the cost of removing this additional wedge. About this time, an action was brought against the contractors by one of the owners of abutting property who had signed such an agreement, claiming that such modification of the contract was void, and that under the original contract he could only be held to pay for the removal of the earth not involved in the one to one slope. This contention, reaching this court, was sustained in *Atwood v. Smith*, 64 Wash. 470, 117 Pac. 393. The contractors were thus deprived from enforcing their agreements with the private property owners for the recovery of any part of the earth involved in the slope of one to one. On the other hand, the city, having modified the contract, had been allowing monthly estimates which had been accepted by the contractors on the basis of the yardage removed in the street and the yardage moved from private property back to the slope of three-fourths to one; and unless, therefore, the contractors could by some means procure the payment of the cost of excavating this additional wedge from the city, they would be unable to receive payment for the work so done. An action in the nature of mandamus was thereupon brought against the city to compel it to include as an item for which the contractors were entitled to receive compensation the various monthly estimates of yardage removed in this additional wedge subsequent to October, 1908. The total yardage involved in this wedge was 281,897 cubic yards, which at the price provided for in the original contract, amounted to $76,112.19. The contractors were successful in this proceeding, and the court below issued its writ as prayed for. The city, thereupon, following the mandate of the writ, passed an ordinance directing the reassessment of an amount sufficient to pay the contractors this sum of $76,112.19, with interest thereon from the respective dates when such monthly payments would have become due and payable if they had originally been allowed by the city upon the original monthly estimate. When this roll came on for hearing before the city council, objections were interposed to its confirmation by

numerous property owners upon the ground that there was no authority in law for charging private property with this item of $47,696.11 accrued interest. The city thereupon notified the contractors that it would confirm the assessment roll in an amount less this accrued interest item, and the contractors, refusing to accept this reduction, brought this action, in which it is sought to compel the city to levy a supplemental or reassessment sufficient to raise the entire sum of $76,112.19. Upon the trial, the lower court refused to permit the city to offset the accrued interest paid. The city has appealed.

The question submitted by the appeal is the correctness of this contention: that the contractors should be charged with the interest earned or accrued upon the bonds from their date to the time of their respective delivery. It seems plain to us that, under the contract, the contractors were to receive in payment for their work bonds at their face or par value, and not bonds with accrued interest amounting to $47,696.11, which would mean that, if the later plan of payment is permitted, the contractors would take the bonds, not at their face or par value, but at a discount of $47,696.11. It is not questioned, as we understand the position of respective counsel, but that the contractors, in accepting these bonds in payment for the work, were to receive them at their face or par value. Section 8020, Rem. & Bal. Code, provides that local improvement bonds may be issued to contractors in payment for their work, or that the bonds may be sold at not less than their par value and accrued interest, and the proceeds thereof applied in payment of the amount due the contractor. If, under this section, the contractor takes the bonds in payment for his work, we think the only reasonable construction to be placed upon it is that he shall, as is the case when the bonds are sold to third parties, accept them at not less than par and accrued interest. It was not contemplated by the statute that there would be any difference in the amount paid the contractor whether he accepts bonds in payment for his work,

or whether bonds were sold to others and the contractor paid in cash.   These bonds were in the principal sum of $100, and if the contractor is to accept them, he must accept them at their par or face value to the same extent that he accepts currency or gold at its face value.   If, at the time of its delivery to the contractor, $5 had been earned as interest on each bond, then the par or face value of that bond at that time would be $105, and we know of no reason why the contractor should give credit for the payment of $100 only, and retain the $5 as a premium or bonus, any more than if paid in cash he should have the right to demand a bonus or premium of the same amount upon every $100 bond.   *Hunt v. Fawcett,* 8 Wash. 396, 36 Pac. 318; *Delafield v. State,* 26 Wend. 192; *Village of Fort Edward v. Fish,* 156 N. Y. 363, 50 N. E. 973; *Jones Co. v. Board of Education of Mt. Vernon,* 30 App. Div. 429, 51 N. Y. Supp. 950; *People v. Miller,* 84 App. Div. 168, 82 N. Y. Supp. 623; *Whelen's Appeal,* 108 Pa. St. 162, 1 Atl. 88.

So far as authority has been called to our attention, the cases generally hold that, in these local improvement contracts providing for payments at certain times, the contractor is not entitled to interest for any period prior to the time of such payment.   *Chicago v. Hulbert,* 205 Ill. 346, 68 N. E. 786; *Booth v. Pittsburgh,* 154 Pa. St. 482, 25 Atl. 803; *Cratty v. Chicago,* 217 Ill. 453, 75 N. E. 343.

Respondents contend that the city, having voluntarily paid this interest, cannot now recover it back, and that the mistake, if any, was one of law and not of fact; citing cases like *Cincinnati v. Cincinnati Gaslight & Coke Co.,* 53 Ohio St. 278, 41 N. E. 239, to the effect that a payment made by reason of a wrongful construction of the terms of a contract is not made under a mistake of fact, but under a mistake of law, and if voluntarily made cannot be recovered back.

While it has been held that the rule that payments made under a mistake of law cannot be recovered back extends to a municipal corporation, there seems to be a distinction be-

tween the wrongful reading of the terms of a contract when the power of the city is not questioned, and a mistake of law as to the legal effect and scope of the contract where the power is lacking, and where it appears that payments have been made, not only unauthorized but in violation of law. So far as we know, this rule has never been applied to prevent recovery of money paid out by city officials without authority, or in violation of law. If, under the correct reading of the statute, the contractor must accept bonds at their par or face value, then the payment by the city of bonds at a discount, or of bonds with earned interest added as a premium, is a payment made without authority and in violation of law, and is in effect a void payment. Such a payment is not to be considered as one voluntarily made by the municipality itself, but as made by those assuming to act for it without authority, and does not estop the municipality from recovering such payment. *Heath v. Albrook*, 123 Iowa 559, 98 N. W. 619; *Ada County v. Gess*, 4 Idaho 611, 43 Pac. 71; *State v. Young*, 134 Iowa 505, 110 N. W. 292; *Bayne v. United States*, 93 U. S. 642; *City of Duluth v. McDonnell*, 61 Minn. 288, 63 N. W. 727; *County of Alleghany v. Grier*, 179 Pa. St. 639, 36 Atl. 353; *Commonwealth v. Haupt*, 10 Allen 38. Nor does the failure of the city to deduct the accrued interest at the time of the delivery of the bonds vest any right in the contractor to this accrued interest, or estop the city from asserting the unlawfulness of such procedure. *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Million v. Soule*, 15 Wash. 261, 46 Pac. 234; *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888; *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601.

In support of its contention that the payment of this accrued interest was a voluntary payment, and cannot now be recovered by the city, respondents cite *Seattle v. Stirrat*, 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275. Without attempting to point them out, we think there are so many distinctions between that case and this that nothing there

said should be accepted as preventing the city from asserting its right to recover this interest.

The next question to be determined is the effect of the judgment in the mandamus proceeding in which the city was directed to allow the respondent $76,112.19 for the yardage in removing the dirt between the one to one and three-fourths to one slope.

The only matter determined in that proceeding was the right of the contractor to receive this additional yardage as a proper item or allowance under the contract. No other question was submitted to the court nor referred to in the pleadings. The contractor asserted his right to be allowed this added yardage as a proper allowance under the contract. The city denied it, and the judgment affirmed it. No one now questions that right, nor is anything here sought to be litigated which limits the extent or binding force of that decree. The claim of the city in this case is that, admitting the correctness of that decree that respondents are entitled to the additional yardage, the city cannot now be required to levy an assessment upon the property in the improvement district in the full amount allowed for that yardage because the respondents now have in their possession certain monies which they should of right apply upon such payment, and the city be directed to levy an assessment only for the remainder. If the city now desired to interpose matter by virtue of which it sought to lessen or defeat respondents' allowance for yardage, that decree would defeat such an attempt, as it in legal effect negatives any defense that might and should have been raised against respondents' then contention. Respondents, however, in that action did not seek an adjudication that the city should levy an assessment upon private property for the purpose of raising the full amount of their claim, nor did they in any way seek to litigate their right to such a direction. Not having done so, they cannot now, when for the first time they come into court and seek such relief, say that the city is, because of the former decree, debarred from set-

ting forth reasons why such relief should be denied. Respondents can hardly be heard to say that they are entitled to the relief now sought because they did not seek or obtain it in the former action, but the city is now precluded from asserting its claim against such relief because the former action was the proper one in which to litigate such claim.

We are, therefore, of the opinion that the lower court was in error in rejecting the offset offered by the city, and the judgment is reversed and the cause remanded with instructions to allow the offset in the sum of $47,696.11; and for further proceedings in accordance with the views here expressed.

ELLIS, FULLERTON, and MAIN, JJ., concur.