[No. 11963. Department Two. November 21, 1914.]

MICHAEL JENNINGS, *Appellant*, v. THE CITY OF PASCO, *Respondent.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTS—CONSTRUCTION—PAYMENT IN BONDS—ACCRUED INTEREST. Where a contractor for a public improvement proposed to do the work for a gross sum, payable in local improvement bonds "at par value with accrued interest thereon," and also itemized his bid according to the units of the plans and specifications of the improvement, a subsequent contract reciting that the gross sum bid is an approximate estimate of the contract price, which is "to be paid in accordance with the unit bid submitted," fifteen per cent of the cost being payable in cash or warrants and eighty-five per cent in local improvement bonds, is so different in its terms as to be deemed an independent contract, and hence the word "bonds" as used in the contract, without qualification or reference to the bid, must be construed in its ordinary meaning as signifying delivery of bonds at their par value, and not as entitling the contractor to bonds whose face value equals eighty-five per cent of the contract price, when their par value is greater by reason of accumulated interest.

SAME—CONTRACTS—DISPUTED POINTS—CONSTRUCTION BY ENGINEER —CONCLUSIVENESS. Where a contract for constructing a public sewer provides that, in case of disputes arising between the parties in regard to the specifications, the construction placed thereon by the city engineer shall be accepted as final, his decision is binding, even though he admit, but without altering his decision, that the specifications might be capable of a different interpretation.

Appeal from a judgment of the superior court for Franklin county, Holcomb, J., entered November 4, 1913, upon findings in favor of the defendant, dismissing an action on contract, tried to the court. Affirmed.

[1]Reported in 144 Pac. 37.

*Cannon, Ferris & Swan* and *John M. Cannon*, for appellant.

*Gerard Ryzek*, for respondent.

FULLERTON, J.—In July, 1910, the city of Pasco, by ordinance, provided for the construction of a sewer system within its corporate boundaries, according to plans and specifications therein adopted. To meet, in part, the expense of the proposed work, the city provided for the issuance of local improvement bonds, to be paid by assessments upon property benefited by the construction of the sewers. Bids were called for, and a contract let for the construction of the work. The person to whom the contract was let, however, failed in his undertaking, and left the work in a partially completed condition. The city subsequently called for proposals for the completion of the work, and the appellant, Jennings, submitted a bid to that end. The bid was on a form evidently prepared by the city. It was preluded with certain cautions and instructions to bidders, among which is found the following recital: "Payments for the work will be based upon the actual quantities measured in the finished work." The bid proper (in the parts necessary here to be noticed) was as follows:

"To the City Council of the City of Pasco:

"The undersigned hereby certifies that he has personally and carefully examined the plan, specifications and form of contract for the work to be done on a sewer system in certain streets and alleys in the city of Pasco; that he fully understands the manner in which payment is proposed to be made for the cost of said improvement, that he hereby expressly agrees that, if awarded the contract for this improvement, he will perform the work according to the plans and specifications under the supervision of the city engineer for the sum of $76,141.35 cash or for the sum of $78,547.35 payable in local improvement bonds, said bonds to be accepted at par value with accrued interest thereon; that having made the necessary examinations, hereby propose to furnish all material and to perform all labor which may be required to com-

plete said work in accordance with said plans and specifications, and upon the terms and conditions provided in said specifications and form of contract, at the following prices, to wit: Less amount paid former contractor.

| Approx. No. and Items. Amount. | | | | | | Price in Figures. | | Price in Words. |
|---|---|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * | * | * |
| | | | | | | | | Fifty-seven |
| 73 Man holes, complete, 8 ft. deep or under... | | | | | | $57.50 | | 50-100 |
| Man holes, complete, per each ft. in depth | | | | | | | | Four 80-100 |
| over 8 ft. ........................... | | | | | | '4.80 | | Dollars |
| | | | | | | | | Six 50-100 |
| Man holes, drop pipe, per lineal foot...... | | | | | | 6.50 | | Dollars |
| * | * | * | * | * | * | * | * | * |
| Total.................................... | | | | | | | | $76,141.35." |

Subsequently a formal contract was entered into, by the terms of which the appellant undertook to complete the work in accordance with the original plans and specifications, agreeing therein to perform the work under the supervision of the city engineer. The contract also contained the following provisions:

"An approximate estimate of the cost of said improvement which the party of the first part agrees to pay the party of the second part is $78,547.35, to be paid in accordance with the unit bid submitted by the party of the second part and as shown by attached proposal, which is hereby made a part of this contract, and said improvement shall be constructed upon the streets covered by the outlet and mains shown by Exhibit A. hereto attached and made a part of this contract, such being outlet No. 1, Main F., Sub-main F, 1 to 7 inclusive, laterals F. 1 to 22 inclusive, Main E. submain E. 1 to 3 inclusive, laterals E. 1 to 13 inclusive; Main C., 1 to 2. The streets and alleys upon which the said improvement is to be made shall be as shown by the sewer map constituting a part of the plans and specifications.

"The contract price herein agreed upon shall include all the costs of preparing and fully completing said improvement in every manner, and the party of the second part shall save the city harmless and shall be bound on its bond for all damages suffered by reason of its neglect to properly guard the streets or alleys during the work on said improvement, and for failure to protect life and property.

"This improvement shall be paid for in the following manner, to wit: That 15 per cent of the contract price shall be paid for by general indebtedness warrants or cash, and that the balance, or 85 per cent shall be paid for by the issuance of bonds issued on Local Improvement Sewer District No. 1, as created by said Ordinance No. 105, and in no event shall the said party of the second part make any claim upon the city from its general fund for the payment under this contract except as herein provided.

"That on or before the 10th day of each month the said party of the second part shall receive the local improvement bonds and cash for 85 per cent of the amount of work performed for the previous month, upon the order or the certificate of the engineer for the completed work as shown by said certificate and after being passed upon and approved by the city council. Said bonds or cash shall be delivered to the party of the second part by the city treasurer. Upon an order from the city council in a sum equal to the estimate of the city engineer, or as near therewith as is possible, on or before the date aforesaid of each month. The party of the first part shall, at all times, retain 15 per cent of the different estimates of the amount of work completed, and no money or bonds shall be paid therefor until the final certificate of the completion of the work herein provided for shall have been filed with the city clerk."

On the completion of the contract, the parties were able, with the exception of the single item hereinafter noticed, to settle all of their disputes over the amount earned under the contract. A difference arose, however, over the amount the appellant was entitled to receive in bonds for the work. The evidence introduced at the trial disclosed that the local improvement bonds contemplated by the ordinance authorizing the work had been dated and signed at some time pending the progress of work under the original contractor, but had never been issued, and were, at the time the appellant submitted his bid, in the hands of the city treasurer. From an examination of the appellant's proposal or bid, it will be observed that, with reference to the gross offer therein contained, the bid is in the alternative; he offers to "perform the

work according to plans and specifications under the supervision of the city engineer, for the sum of $76,141.35 cash, or for the sum of $78,547.35 payable in local improvement bonds, said bonds to be accepted at par value with accrued interest thereon."

The appellant contended before the city officers, contended in the trial court, and contends here, that the contract entered into was a rejection of his offer to perform the work for a consideration payable in cash, but an acceptance of his offer to perform the work for a consideration payable in local improvement bonds; that, by the terms of this part of the offer, he is entitled to bonds which, on their face, exclusive of interest, equals the sum the contract provides he shall receive in bonds. His present suit on this branch of the case has its foundation in this contention. In the court below, the city defended on two grounds: First, that it was not a proper construction of the contract; and second, that, if the contract bears that construction, it is *ultra vires*, because an agreement the city was without power to make. The trial judge adopted the latter view, and denied recovery, holding that the case fell within the principle of the case of *State ex rel. Grant Smith & Co. v. Seattle*, 74 Wash. 438, 133 Pac. 1005.

But we agree with the appellant that the trial court must have overlooked the vital distinction between the facts of the two cases. In the case cited, it was not contended that the contract by which the contractors agreed to accept bonds in lieu of cash called for a delivery of bonds at their face value less the accumulated interest, and the court well held that, in the absence of a contract calling for payment in that manner, such a payment would be an overpayment in the nature of a gift, and one not within the power of the city to make. But here it is the gist of the appellant's contention that his contract calls for a payment in bonds at their value, less the interest accumulated at the time of their delivery. Clearly, if, under the statute forbidding the sale of local improvement

bonds at less than par, the city may lawfully contract to pay the cost of a public improvement in bonds at all, it may contract to turn them over at the face value less the accumulated interest. Cities are able to make public improvements by payment in bonds solely because the contractor can discount the bonds by increasing the contract price for the work, and it is just as lawful to discount them by deducting accumulated interest, as it is to discount them by increasing the contract price in a sum equal to the amount of the accumulated interest.

But we think the judgment may rest, nevertheless, on the first ground suggested by the city. If we were to regard the language of the proposal itself as the governing consideration in fixing the amount of bonds the appellant is to receive for the work, it can be seriously questioned whether it will bear the interpretation he puts upon it. But, be this as it may, the contract subsequently entered into, where free from ambiguity, must measure the rights of the parties, and we think its language clear on this particular question. The proposal, it will be observed, not only contained gross bids for the particular work, but contained a unit bid, also—that is, a bid based on the units into which the work was divided by the city in making estimates of its prospective cost. In the contract it is recited that the sum bid is an approximate estimate of the contract price, which is "to be paid in accordance with the unit bid submitted . . . as shown on the attached proposal." The contract differs from the proposal, also, with respect to the amount of the contract price to be paid in bonds. Instead of providing that the entire cost of the work shall be paid in bonds, it provides that but eighty-five per cent of the cost shall be so paid, and that the remainder, fifteen per cent, shall be paid either in cash or by warrants drawn upon the city's general fund. The term "bonds" is used in the contract without qualification, and without reference to the proposal, or the explanatory phrase therein concerning accrued interest. This must mean, we

think, that the city did not accept any form of the proposal in its entirety, but used it rather as a basis for an independent agreement. This being so, the words and terms used therein must be given their ordinary and usual meaning, independent of any reference to the proposal where the contract itself does not make such reference. The word "bonds," therefore, as used in the contract, must be given the meaning that ordinarily obtains when used without explanation. In this case, it would mean that the bonds are to be taken at their par value, that is, the face of the bond plus the accumulated interest at the time of delivery. *State ex rel. Grant Smith & Co. v. Seattle, supra.*

The second matter in dispute arises over the price agreed to be paid for the installation of the drop pipe man holes. The proposal we have quoted in another connection. The specifications relating to the matter read as follows:

"Ordinary man-holes and flush tanks will be paid for on the basis of a depth of eight feet, with an additional amount for each foot by which the depth exceeds eight feet, the price bid to include excavating and back filling, furnishing and settling iron castings and steps and completing the whole as set forth in the plans and specifications. The depth of man-holes shall be measured from the invert of the pipe to the top of the cover as set to grade. Drop man-holes will be paid for as above except that the drop-pipe will be paid for on a basis of per foot of lineal length in place which price will include the furnishing all special and other material needed. In the case of man-holes the price bid shall include the furnishing in place of all joints of pipe required for inlets to man-holes other than the main line of pipe, as shown on the plans or directed by the engineer."

The appellant contends that, under the bid as explained by the specifications, he is entitled for the installation of a drop pipe man hole to the price agreed to be paid for an ordinary man hole, plus $6.50 for each lineal foot of drop pipe used in such construction. The city engineer construed the contract to mean that the appellant was entitled for a drop pipe

man hole to the price agreed to be paid for an ordinary man hole when the depth was eight feet or less, and that sum plus $6.50 per foot for each foot in depth over eight feet. It was on the engineer's estimates that the city tendered settlement. The question, what is the proper construction of the contract, is, we think, sufficiently doubtful as to give rise to a legitimate dispute; and in such cases, both the contract and the specifications provide that the engineer's construction shall be accepted by both parties as final and conclusive. This would conclude the matter but for the fact that the engineer, while on the witness stand, expressed a doubt as to the correctness of his interpretation, and this, the appellant contends, opens the doors to an investigation by the courts. But, as we read his evidence, the engineer meant no more than to say that the contract was capable of a different construction from that which he originally gave it, not that he had departed therefrom, or that his original construction found no support in the wording of the contract. Our conclusion is that this branch of the case is foreclosed by the engineer's decision.

There is no reversible error in the record, and the judgment will stand affirmed.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.