No. 28,019.

THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellant,* v. THE CITY OF ARKANSAS CITY, *Appellee* and *Cross Appellant;* C. H. EVERETT, Intervener, *Appellee.*

(266 Pac. 60.)

### SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Contracts—Power to Modify or Rescind—Election to Pay by Bonds under Option for Bonds or Money.* A city entered into a contract with a contractor to build a sewer in a designated district for a stipulated price, payable in bonds or money at the option of the city. The contractor bargained with the plaintiff to finance him in the construction of the sewer. He assigned the estimates given by the city from time to time and his claims under them to the plaintiff, and also his right to the bonds to be issued in payment of the construction of the sewer. A few days before the completion of the sewer and its acceptance by the city, the latter recognized the assignments made by the contractor to plaintiff, and by a resolution agreed with plaintiff to deliver the bonds, upon which the plaintiff advanced a large sum of money to the contractor. It is held that the action of the city and its agreement with plaintiff constituted a valid contract and an irrevocable election to issue and deliver bonds to plaintiff in payment for the sewer, which it accepted and is now using, and it had

Contracts, 13 C. J. pp. 268 n. 19, 587 n. 42; 6 R. C. L. 852. Judgments, 34 C. J. p. 911 n. 35. Municipal Corporations, 28 Cyc. pp. 1056 n. 31, 1061 n. 73. Payment, 30 Cyc. p. 1220 n. 85.

no right thereafter to issue, sell and deliver the bonds to another bond dealer.

2. SAME—*Contracts—Damages for Breach.* The contract between the plaintiff and the city to deliver the bonds issued in payment for the sewer is an enforceable one, upon the breach of which the plaintiff is entitled to recover the damages sustained by such breach.

3. CONTRACTS—*Uncertainty of Terms—Practical Construction by Parties.* A contract uncertain in some of its terms may by practical construction or otherwise be cured and made certain after its execution and before suit is brought thereon.

4. MUNICIPAL CORPORATIONS—*Breach of Contract—Action Not Precluded by Acceptance of Cash with Reservations.* An acceptance by plaintiff of payment in cash for the price of the sewer does not preclude the maintenance of an action for the damages sustained for the failure of the city to deliver the bonds where the parties expressly agreed that such payment would not affect or prejudice plaintiff's rights to a recovery of such damages.

5. JUDGMENTS—*Res Adjudicata—Necessity of Showing Issues Presented in Former Action.* On the facts recited in the record the decision in a mandamus action between the same parties, the grounds of which were not shown does not estop the plaintiff to maintain an action for damages for a violation of the contract.

6. TRIAL—*Matters Conceded at Trial—Interest.* On the facts stated in the opinion and the concessions of the parties, it is held that the contractor who intervened in the action was entitled to recover interest from the city for the time which elapsed from the completion of the sewer until payment was made therefor.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed April 7, 1928. Reversed as to Brown-Crummer Investment Company, and affirmed as to C. H. Everett.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, Thomas E. Elcock* and *James G. Martin,* all of Wichita, for the appellant.

*Tom Pringle,* of Arkansas City, and *James A. McDermott,* of Winfield, for appellee and cross appellant, City of Arkansas City.

*A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, *W. L. Cunningham* and *D. Arthur Walker,* both of Arkansas City, for appellee and intervener C. H. Everett.

The opinion of the court was delivered by

JOHNSTON, C. J.:    The Brown-Crummer Investment Company sued Arkansas City to recover $18,878.51, as damages for its failure to deliver certain bonds of the city in compliance with an alleged agreement.   The cause was submitted on pleadings, opening state-

ments and admissions made in open court. It was adjudged by the court that the plaintiff was not entitled to recover on its claim, and gave judgment against it for the costs of the action. Plaintiff appeals.

The record discloses that Arkansas City created a sewer district designated as sewer district number six and advertised for bids for the sewer's construction. A bid made by C. H. Everett was accepted, and on July 1, 1921, a contract was entered into between the city and Everett, that he would construct the sewer at stipulated price for work actually done, the total price of which was later found to be $116,232. Among other things the contract provided that at the end of each month the engineer would make an estimate of the material delivered and work done, which would show the amount due to the contractor under the estimate. It was provided also that a final estimate should be made on the completion of the improvement giving the total contract price for the work done. When a maintenance bond was given and receipts for material were shown, or in lieu of them a list of unpaid bills should be produced, and when the contract was completed and the work had passed a city test, the contractor, Everett, should be paid the total of the final estimate or as much as remained due after deducting the total of all unpaid bills. As to payment under the contract it was provided that "payment shall be made in bonds with accrued interest or cash at the option of the city." Everett arranged with plaintiff to finance the project. By their arrangement the plaintiff was to advance money to meet the bills for labor and material as the work progressed, upon notes to be given by Everett drawing interest at eight per cent per annum, he to assign to plaintiff the estimates given by the city as security for the payment of the notes.

On September 15, 1921, the plaintiff proposed to Everett that he should assign all his rights to purchase sewer bonds on the condition that they would amount to approximately $115,000, bearing interest at the rate of six per cent per annum, and that they should be delivered to plaintiff at par value and accrued interest to date of payment, and that if not delivered to plaintiff by January 15, 1922, plaintiff should have the benefit of accrued interest from that date to the date of payment. Plaintiff also proposed to cash and carry the estimates to be delivered to Everett in part payment of the improvement, these to be assigned to plaintiff with proper recogni-

tion by the city, Everett to affix thereunto his personal notes bearing eight per cent per annum interest for money advanced by plaintiff from time to time, it being understood that the amount of advancements should be approximately $50,000. On September 19, 1921, the first estimate was made for $23,433.37, and Everett made an assignment of it and of the bonds due or to become due to him from the city to plaintiff. The city through its board of commissioners accepted notice of the assignment on that date, and agreed to deliver bonds to the plaintiff as soon as the same are legally deliverable under its contract with Everett. On October 10, 1921, a second estimate was made amounting to $36,497.90, which was likewise assigned to plaintiff, and notice of the assignment was accepted by the city, and it agreed to deliver bonds in payment of the estimate in terms similar to that made on the first estimate. On January 3, 1922, a further assignment was made by Everett to plaintiff of all bonds issued to pay for the improvement. The assignment was recognized by the city, and it agreed to deliver all bonds covered by the assignment, subject, however, to the full performance of all the agreements on the part of Everett in his contract with the city for the construction of the sewer. The same day the city adopted the following resolution:

"WHEREAS, The city of Arkansas City, Kan., has entered into a contract with C. H. Everett for the construction of sewer improvements in sewer district No. 6 of said city; and

"WHEREAS, The city of Arkansas City has agreed to deliver to said C. H. Everett its negotiable. bonds for the payment of such work; and

"WHEREAS, Said C. H. Everett has made an assignment of all his right, title and interest in and to said bonds to the Brown-Crummer Investment Company, of Wichita, Kan.:

"*Now, therefore, be it resolved by the board of commissioners of Arkansas City, Kan.,* That said city shall pay said C. H. Everett, the contractor, in bonds, for all work in sewer improvement district No. 6, and that it accepts the terms of said assignment and agrees to deliver the bonds to be issued in full payment of such work, to the Brown-Crummer Investment Company of Wichita, Kan., as soon as the same can legally be issued, subject to the full performance of the terms and conditions in the contract for said sewer improvements entered into between said Everett and city of Arkansas City, and all the terms and conditions of said assignment and indorsements thereon."

The plaintiff alleged that relying on the resolution quoted and the agreement of the city to deliver the bonds, it advanced to Everett the further sum of $35,000. Later, and on January 23, 1922, when the sewer was completed, the city claimed that it still had the

option to determine whether it should pay for the improvement in money or bonds, and it claimed to have exercised its option to pay in money and declined to deliver bonds to the plaintiff as recited in the resolution. On February 16, 1922, the city passed an ordinance purporting to repeal the resolution passed on January 3, 1922, and later it issued and sold the bonds to another bond dealer, bearing interest at the rate of five and one-half per cent per annum, and out of the proceeds it paid to the plaintiff $116,372.27, the contract price of the improvement; but the payments were received upon an express agreement that the plaintiff's right to damages for the failure to deliver the bonds mentioned should not be prejudiced by the acceptance of the cash payment. The plaintiff procured the printing of blank bonds at a cost of $110, and this sum was included in its claim for damages.

The principal point in controversy is whether the city had exercised its option to pay for the improvement in bonds or money. It is conceded that it alone had that option, but it is contended that when the city passed the resolution recognizing the assignment by Everett to plaintiff of all his right, title and interest to the bonds, and had expressly agreed to deliver the bonds to plaintiff, the option had been effectively exercised, and that payment could only be made in bonds. It was alleged that the city announced to bidders at the letting of the contract that the one who secured the contract must accept in payment six per cent bonds at par, and the import of the resolution quoted and its acceptances and agreements noted on earlier estimates, is that the cost of the improvement was to be paid in bonds instead of money. The court is of the opinion that the resolution and the action taken under it constitutes an unequivocal election to deliver bonds in payment of the improvement, and that when issued they were to be delivered to the plaintiff. In connection with the election there was an independent agreement to deliver them to the plaintiff. On the faith of that election and agreement the plaintiff had advanced a large sum of money towards the payment of the expense of the improvement. One of the contentions of the city is that the resolution related to a public governmental function, and finding that the action taken was improvident and erroneous, it could at will rescind its action and repeal the resolution. It must be granted that the construction of a sewer being a provision to conserve the public health is a governmental or public function rather than a private or proprietary one. (*Foster v.*

*Capital Gas and Electric Co.*, 125 Kan. 574, 265 Pac. 81. Assuming that the provision for the construction of a sewer is public and governmental in character, it does not necessarily follow that the contract for the sale of the bonds to plaintiff is subject to rescission or repudiation by the city. The contract for the delivery of bonds was something apart from the contract to build the sewer. When the option had been exercised and the construction of the sewer was about complete it became necessary, of course, to make provision for the issuance and delivery of the bonds. A few days after the resolution was adopted the sewer was complete, and was then accepted by the city as a full compliance with the construction contract. While the city was not compelled to exercise its option until the sewer was entirely complete, it had the right to make the election when it was done, and having made it and having agreed to deliver the bonds to plaintiff, a contractual relation arose between the plaintiff and the city. That contract was not with Everett, but was with one not a party to the building contract. The matter of delivery and disposition of the bond lies outside of the public and governmental function, and has been said to be an executive and administrative act. In *Smalley v. Yates*, 41 Kan. 550, 21 Pac. 622, the electors of a city had voted bonds to the amount of $50,000, running thirty years, bearing six per cent interest, for the construction of waterworks. An ordinance was passed providing for notice of bids for the purchase of bonds. Notice was given, but no bids were received, and the city by resolution offered the bonds for sale at public auction. At that sale Smalley was the best bidder and a sale to him was declared by the city. Later the city passed a resolution purporting to revoke the sale to Smalley, and made a sale of the bonds to another party. Smalley brought an action to compel the issuance of the bonds to him in fulfillment of the contract of sale. It was held by the court that the city could not rescind the sale made to Smalley by adopting a subsequent resolution providing for a different mode of disposing of the bonds and making a sale to another. The sale, it was said, was an executive and administrative act, and that after the sale to Smalley the city had exhausted its power in that respect and that the last ordinance came too late and could not affect or nullify the sale first made. The court issued a peremptory writ requiring a delivery of the bonds to Smalley according to the terms of the contract. According to this authority

the contract in question made with the plaintiff for the delivery of the bonds is a different transaction, involving not a governmental function which under some circumstances would not be beyond repeal, but is one to be classed as executive and administrative in character. That authority is also decisive of the point that such contracts are enforceable in like manner as contracts between private individuals. See, also, *Fidelity and Guaranty Co. v. City of Pittsburg,* 115 Kan. 740, 225 Pac. 83; *Illinois Trust & Savings Bank v. Arkansas City,* 76 Fed. 271.

Although the consideration of the contract is challenged, there can be little doubt as to the sufficiency of the consideration. The plaintiff which had previously advanced more than $50,000 to the contractor, which was the amount it had agreed to advance to him on the improvement, made another advance of $35,000 after the city had agreed to deliver the bonds to it. This was done in reliance upon the agreement the city had made with it. Preliminary arrangements for the disposition of the bonds were made by the plaintiff, and it had caused the printing of blank bonds with a view of facilitating the prompt delivery of them. Plaintiff, which was a dealer in bonds, had obligated itself to purchase and dispose of the bonds and had assumed the hazard of a falling market and to suffer a loss if they brought less than the current value.

Another contention of the city is that if it be granted that there was an exercise of the option and an agreement to deliver the bonds to plaintiff, the agreement was too indefinite to be enforceable. In the agreement no mention was made of the rate of interest the bonds should bear or the period within which they would mature. It is argued that this was an important element of the agreement, the omission of which renders the agreement so incomplete as to be invalid. There was uncertainty in these respects at the time the agreement was made, but it cannot be said that there was any uncertainty after the city had issued the bonds. Both parties were negotiating as to sewer bonds of this particular sewer project, and which were referred to in the resolution which closed the agreement to deliver the bonds to plaintiff. Whatever indefiniteness there was as to rate of interest or time of maturity, these were made definite when the bonds were executed. In the contract with Everett the parties stipulated that if the improvement was paid for in bonds they should be accepted at par with accrued interest. Indefiniteness in an agreement when made may be cured by the subsequent acts of

the parties. In Williston on Contracts the matter of curing an uncertainty in a contract by performance was treated.

"If, however, the side of the agreement which was originally too vague for enforcement becomes definite by entire or partial performance, the other side of the agreement (or divisible part thereof, corresponding to the performance received), though originally unenforceable, becomes binding. And even without performance on either side the original indefiniteness may sometimes be cured by a subsequent definition of the intended performance." (§ 49. See, also, *Kansas City v. Construction Co.,* 86 Kan. 213, 120 Pac. 347; *King v. Stephens et al.,* 113 Kan. 558, 215 Pac. 311; *Jennings v. City of Pasco,* 82 Wash. 335, 144 Pac. 37; *Daily v. Minnick,* 117 Ia. 563; *Work v. Welsh,* 160 Ill. 468.)

In *Gould v. Gunn,* 161 Ia. 155, it was said:

"Again, a contract, uncertain when made, may, by practical construction or otherwise, be made certain after its execution and before suit brought; and practical construction is often a safe guide whereby to determine the intention." (p. 164.)

The issuance of the bonds agreed to be delivered, fixing the rate and the time they were to run, cleared away the only uncertainty asserted. The bonds were issued bearing interest at five and one-half per cent per annum and running for a period of twenty years.

There is a further contention that the acceptance of payment in money of the contract price of the improvement was not only a satisfaction of the assigned claim, but operated as a waiver of all claims for damages that the assignee might have had for a breach of the agreement. Under the pleadings the effect of the tender of the contract price of the improvement and its acceptance was not left for determination under the general rules of law. It was expressly agreed between the plaintiff and the defendant that the payment and acceptance of the money should not affect or prejudice plaintiff's right to damages for the failure of the city to deliver the bonds in accordance with the agreement. This express reservation left the matter of damages open for judicial determination.

Another proposition advanced by the city is that the issues in the action had formerly been adjudicated. In 1922 a mandamus action was instituted by the plaintiff to compel the issuance and delivery of the bonds to plaintiff. That action was challenged by a motion to quash the writ, which was sustained by the court. Upon what ground the writ was quashed is not shown. Among the grounds asserted by the city was one that the action was prematurely brought. The mandamus proceeding was begun before the bonds had been

issued. One of the grounds on which the writ was assailed was that there was an adequate remedy at law available to the plaintiff, and that remedy is the one being pursued in this action. It appears that no opinion was filed by the court when the motion was sustained, and hence there is no way of showing what was actually adjudicated. There appears to have been an adequate remedy at law to recover damages through the loss sustained by plaintiff, and it is not unreasonable to assume that the court determined that it could not and would not grant relief by the provisional remedy of mandamus. In the mandamus action the form of action not only was different, but a different relief was sought than is asked in the instant case, and since it is not shown what issues were actually presented and on which the decision of the court was rested, it cannot be said that there had been a former adjudication which estops plaintiff from maintaining the present action. In this situation the party is not bound by all that might have been litigated in the action. They are conclusively bound by what was in fact litigated and decided. (*Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825.)

In *Routh v. Finney County*, 84 Kan. 25, 113 Pac. 397, it was said:

"A judgment which may have resulted from a determination of either one of two or more separate issues, does not constitute an adjudication as to either where it is not shown upon which it was in fact based." (Syl. ¶ 2.)

In *De Sollar v. Hanscome*, 158 U. S. 216, it was said:

"If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment . . . was rendered, the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined."

On the record presented we cannot hold that the doctrine of *res adjudicata* applies to this action.

A cross appeal is filed from the judgment rendered by the court against the city and in favor of C. H. Everett, the intervener. He had built and completed the sewer on January 23, 1922. On that date it was accepted by the city as a satisfactory compliance with the contract. He then became entitled to full payment of the contract price. He did not, it appears, have the means to carry on the work, and had arranged with the investment company to finance him and thus enable him to meet bills for labor and material necessary to carry on the work. He executed his notes to the investment

company drawing eight per cent interest and secured them by the estimates which were obtained from the city from time to time as the work progressed. As further security he assigned to the investment company the bonds which the city by resolution agreed to deliver to the investment company. Before payment was made, however, the city undertook to rescind its agreement with the investment company and insisted on paying the cost of the sewer in cash instead of bonds. This was followed by an action of mandamus brought against the city to compel the issuance and delivery of the bonds, and that action delayed payment until it was determined. The interest on the amount due from the time the sewer was accepted until payment was actually made is the amount claimed by the intervener, and it was allowed to him by the judgment of the court. Everett, it appears, formerly brought suit against the city to recover payment of interest, and upon the pleadings the trial court rendered judgment for the city. On appeal to this court that judgment was affirmed. (*Everett v. Arkansas City,* 118 Kan. 444, 235 Pac. 856.) This decision was made upon the ground that under the pleadings it could not be determined whether $1,189.78 of interest was due to the investment company or to Everett. The court decided and remarked that the interest was due to one or the other of these parties, depending upon whether or not Everett's debt to the investment company had been discharged and the right to interest determined. The court then said:

"No good reason appears why he may not interplead in the action pending between the Brown-Crummer Investment Company and the defendant city." (p. 447.)

It now appears that this feature of the controversy has been settled between Everett and the investment company, and the plaintiff in the present action made the following statement in open court:

"For the purposes of the record I want to concede as between Mr. Everett and ourselves, in order to settle the question about interest, Mr. Everett is entitled to this claim which he makes for interest. I think the court understands what the claim is. In other words, we are not claiming the fund he is in here intervening for."

The city in its brief says that it had tendered the interest to the investment company, which was not accepted; but "if Brown-Crummer Investment Company desires to waive its right to the interest tender, then the city has no objection to paying this

$1,189.78 interest item to Everett." In this situation there is no ground for further controversy about the interest or the right of Everett to the interest. He was entitled to recover the amount of interest acknowledged to be due, and the judgment in his favor is therefore affirmed. For the reasons already stated the judgment of the city against the Brown-Crummer Investment Company will be reversed and the cause remanded for a new trial.

JOHNSTON, C. J. (dissenting): Inasmuch as the building of a sewer is a governmental function, it was within the power of the city commission to repeal the resolution and rescind its action relating to payment in bonds instead of in money, therefore I am unable to concur in the decision upon that point.

I also dissent from the determination that the resolution resulted in a valid contract. As the parties did not agree upon the rate of interest the bonds should bear nor as to the time the bonds should run, the so-called contract is so incomplete and indefinite as to be unenforceable.

HARVEY, J., concurs in the dissent.