PEOPLE ex rel. BANK FOR SAVINGS IN CITY OF NEW YORK v.
MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. May 12, 1903.)

1. TAXATION—SAVINGS BANKS—PAR VALUE OF SURPLUS—INCLUSION OF ACCRUED INTEREST.
    Under Tax Law (Laws 1896, p. 795, c. 908, Laws 1901, p. 296, c. 117) § 187b, providing that every savings bank shall pay an annual franchise tax equal to 1 per cent. "on the par value of its surplus and undivided earnings," interest on investments, accrued, but not payable at the time of the assessment, is properly included; Banking Law (Laws 1892, p. 1853, c. 689) § 20, requiring the banks in making reports of their condition to state the whole amount of "interest or profits received or earned."

2. SAME—MARKET VALUE OF SECURITIES.
    Under the express provisions of the tax law, interest-paying stocks and bonds are to be assessed at their par, and not their market, value, notwithstanding Banking Law, § 124, provides that in determining the per cent. of surplus held by a savings bank its interest-paying stocks and bonds shall not be estimated above either their par or market values.

3. SAME—REAL ESTATE.
    Evidence in certiorari to review a savings bank assessment considered, and held to show that the assessment of its real estate was excessive.

4. SAME.
    An assessment at cost of a building erected for a savings bank is not justified where all the other evidence shows that its present value is not so great.

5. SAME—FAILURE TO EXEMPT SAVINGS BANK—CLASS LEGISLATION—CONSTITUTIONALITY OF STATUTE.
    Tax Law (Laws 1896, p. 797, c. 908) § 4, subd. 7, provides that the realty of a corporation organized exclusively for the moral or mental improvement of men or women, or for religious, charitable, or beneficial purposes, shall be exempt from taxation, unless any officer, member, or employé shall receive any pecuniary profit therefrom, except reasonable compensation for services in effecting its benevolent purposes, or as beneficiaries, or unless the organization be a guise for directly or indirectly

making any pecuniary profit. Laws 1901, p. 296, c. 117, § 187b, imposes on domestic savings banks an annual franchise tax. *Held*, that Tax Law, § 187b, was not in violation of Const. U. S. Amend. 14, prohibiting the states from denying to persons within their jurisdiction the equal protection of the laws.

6. SAME.

The charter of a savings bank (Laws 1819, p. 66, c. 62) recited that the act was passed for the purpose of encouraging in the community habits of industry and economy, by receiving such small sums as might be saved from the earnings of tradesmen, mechanics, etc. *Held*, that the fourteenth amendment was not violated by including this savings bank within the operation of Tax Law (Laws 1896, p. 795, c. 908; Laws 1901, p. 296, c. 117) § 187b, it not differing from other savings banks.

7. SAME.

The constitutional requirement of equality in taxation does not preclude the granting of exemptions.

Certiorari by the people of the state of New York, upon the relation of the Bank for Savings in the City of New York, against Nathan L. Miller, as Comptroller of the state of New York, to review the Comptroller's determination in denying relator's application for a revision of its tax assessment. On writ and return. Assessment modified.

Hearing on a return to a writ of certiorari issued July 12, 1902, to review the determination of the Comptroller of the state of New York in denying the application of the relator for a revision and readjustment of an assessment for taxes made by him upon the franchise or business of the relator, based upon the par value of its surplus and undivided earnings for the year ending June 30, 1901. The assessment made by him for that year was the sum of $4,610,252.92, and the tax at the rate fixed by law amounted to $46,102.53. The Comptroller, after hearing the proofs offered by the relator in support of its application for a revision and resettlement of such assessment, determined that the assessment did not include taxes which could not lawfully be demanded, and declined to make any revision or readjustment of the same, and this is the determination which is brought here for review.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Strong & Cadwalader, William Greenough, and George W. Wickersham, for relator.

John Cuneen, Atty. Gen., and William H. Wood, Dept. Atty. Gen., for respondent.

CHESTER, J.  The relator challenges the legality of the assessment of the par value of its surplus and undivided earnings made by the respondent upon the grounds that he improperly included therein, first, interest accrued upon investments, but not due or payable on June 30, 1901; second, a valuation at par of certain stocks and bonds owned by it, when their market value was $296,500 less than such par value; and, third, an overvaluation of its banking house and lot of $350,000. It is also urged that the law authorizing the tax is unconstitutional.

The law under which the tax was imposed upon the relator, which is a savings bank organized pursuant to a law of this state, is section 187b of the tax law (Laws 1896, p. 795, c. 908), and was added thereto by Laws 1901, p. 296, c. 117. The section is as follows:

"Sec. 187b. Franchise Tax on Savings Banks.—Every savings bank incorporated, organized or formed under, by or pursuant to a law of this state, shall pay to the state annually for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity, an annual tax which shall be equal to one per centum on the par value of its surplus, and undivided earnings."

The objections urged against the validity of the tax will be considered in the order above mentioned.

First. The Comptroller, in my opinion, correctly included in the assessment the amount of interest accrued upon investments, although not yet due. The law requires the assessment to be upon the "par value" of the surplus and undivided earnings of the bank. The term "par value" has such a well-known meaning, not only in commercial and financial circles, but as applied to ordinary and everyday business affairs, that resort to the authorities for a definition would appear to be needless. It is sufficient for the purposes of this case to mention the following authorities, which hold that in determining "par value" the interest accrued up to the time of fixing the value must be included with the principal: Village of Fort Edward v. Fish, 156 N. Y. 363, 50 N. E. 973; State of Illinois v. Delafield, 8 Paige, 527, affirmed Delafield v. State of Illinois, 26 Wend. 192; Id., 2 Hill, 159; Hogg's Appeal, 22 Pa. 479. The accrued interest is an asset of the bank, as well as the principal of the loan upon which the interest has been earned. The banking law (Laws 1892, p. 1853, c. 689, § 20) requires banking institutions, in making reports of their condition to the Superintendent of Banks, to state the whole amount of "interest or profits received or earned." That is equivalent to saying that the amount of interest accrued should be included in such report up to the date for which it is made. On the other hand, the law requires the amount of dividends credited to depositors to be stated. In arriving at the surplus and undivided earnings, the Comptroller, following the method provided by law with respect to these reports, included in the assets the interest accrued upon investments up to June 30, 1901, and, on the other hand, included in the liabilities the dividend or interest on deposits declared June 12th and payable July 1, 1901. The difference between the assets and the liabilities without so including both these items would not have been a truthful statement of the surplus and undivided earnings of the relator upon June 30, 1901, the date of the assessment; and the item objected to was, therefore, properly included.

Second. It is urged that because section 124 of the banking law (Laws 1892, p. 1901, c. 689) provides that in determining the per cent. of surplus held by a savings bank its interest-paying stocks and bonds shall not be estimated above their par value, or above their market value if below par, the Comptroller erroneously included in the assessment $296,500, the difference between the market and the par value of certain of its stocks and bonds. But that section has no relation to the question presented here, for it simply provides the method of determining when the authorized surplus amounts to 15 per cent. of the bank's deposits, so as to require under the law an extra dividend to depositors. The law in question here provides in express terms that the tax shall be charged on the par value of the surplus

and undivided earnings, and the Comptroller, therefore, properly took that as the basis for the tax, instead of the market value. Nor would the relator probably care to have the tax assessed upon the market instead of the par value, in view of the fact that out of investments in stocks and bonds held by it amounting at par on June 30, 1901, to $39,311,000, only $3,900,000 of them had a market value less than their face or par value.

Third. The Comptroller included the banking house and lot of the relator in his assessment at a valuation of $750,000. The relator insists that the real value thereof was only $400,000, and that, consequently, there was an overvaluation of $350,000. The property is situated at the southwest corner of Fourth avenue and Twenty-Second street in the borough of Manhattan. It has a frontage on Fourth avenue of 98 feet 9 inches and on Twenty-Second street of 132 feet. The building, which is of steel and marble, was completed in 1894. It is one story (about 60 feet) in height, and covers the entire plot of ground except 10 feet on the Twenty-Second street side. It was constructed with special reference to the needs of the relator, and is suitable only for the purposes of a banking house. The lot cost $333,000 in 1892, and the building, including all the furnishings, vaults, and fixtures, cost upwards of $400,000, making the total cost of the property $751,301.06. On January 1, 1895, the relator charged off $350,000 in this account to profit and loss, and has since carried the building and lot on its books at a valuation of $400,000. They were stated at this value in the report to the Comptroller. He was not satisfied with this valuation for the purpose of his assessment, and resort was, therefore, had to testimony given on the question in behalf of the bank and also by an expert employed by the state. The witnesses on both sides put the value of the property much below its cost, yet the Comptroller has assessed it practically at cost. While it is proper to give due weight to the element of cost in fixing the value, that should not control against proof showing a less value. It is well known that a building, especially one constructed for a special purpose, is rarely worth in the market what it has cost to erect it. That appears to be the case here, if the evidence on both sides on that question is to be regarded; and the bank, therefore, not desiring to inflate its assets, carried the property upon its books at what its officers considered to be its value. The Comptroller, however, was not bound to take their estimate of its value. But I think he was in error, under the circumstances presented here, in assessing the property at its cost, for in doing so he must have disregarded the testimony on both sides that it was of much less value than that. In fact, outside of the proof as to the cost, there is no evidence justifying the inclusion of the property in the assessment at the value which was placed upon it by the Comptroller. The opinion of the expert called by the relator was that the lot was worth $334,000, and the lot and building $434,000. He fixed $100,000 as the value of the building for old material, and not as its value to the bank as a going concern. The expert called by the state testified that land in that neighborhood had increased in value since the bank purchased the property, and gave it as his opinion that the lot was worth $390,000,

and that the building was worth $200,000 for the purposes of a bank. Manifestly, the value of the building as old material should have little weight in fixing the actual value of the property as it existed at the date of the assessment; and, when all the evidence in the case on this subject is considered, I think such value has fairly been shown to be the sum of $590,000, and that the valuation of the lot and building cannot be sustained on the proof here at a higher sum than that. This involves a reduction in the assessment made by the Comptroller of $160,000.

Fourth. The relator finally urges that the statute authorizing the tax contravenes that part of the fourteenth amendment of the United States Constitution which prohibits any state from denying to "any person within its jurisdiction the equal protection of the laws." The argument, in brief, is that savings banks are quasi charitable and purely benevolent institutions, and that as, under the statutes of New York, all other classes of corporations engaged in benevolent and charitable work are exempt from taxation, the franchise tax imposed upon savings banks is an unjust discrimination against them within the meaning of such amendment. The answer to this is that savings banks are not exclusively charitable or benevolent corporations, which are the only ones exempt from taxation under the law, nor are they charitable or benevolent corporations at all in any legal sense, or within the meaning of those terms as used in the act exempting such corporations from taxation. Tax Law, Laws 1896, p. 797, c. 908, § 4, subd. 7. It is true that savings banks have been referred to in some judicial opinions as benevolent institutions, and, when looked upon as institutions which are a benefit or advantage to their depositors, such reference is entirely correct. Instead, however, of their being benevolent and charitable institutions, they are primarily organized to encourage thrift and economy in their patrons, with, of course, a resulting benefit to the community where they are located to the extent that they are successful in promoting these qualities. That the relator is not different from other savings banks in this respect is made entirely' clear by the special law or charter under which it was organized (Laws 1819, p. 66, c. 62), where it is said that the act for its incorporation was enacted "for the laudable purpose of encouraging in the community habits of industry and economy, by receiving * * * such small sums of money as may be saved from the earnings of tradesmen, mechanics, labourers, minors, servants, and others." Again, this franchise tax is laid upon the surplus and undivided earnings of all savings banks alike, and for that reason there is no discrimination in the tax. Nor does the requirement of equality and uniformity preclude exemption from taxation. 25 Am. & Eng. Enc. of Law (1st Ed.) 61, and cases cited. A franchise tax upon the surplus of savings banks was upheld by the Court of Appeals in Monroe Co. Savings Bank v. Rochester, 37 N. Y. 365, but the constitutional question raised here was not presented in that case.

If I am correct in the views expressed, it results that the Comptroller should have revised and resettled the assessment by reducing it from $4,610,252.92 to $4,450,252.92, and by reducing the tax from

$46,102.53 to $44,502.53. The assessment and tax should be modified accordingly, and, as so modified, should be confirmed, with $50 costs and disbursements to the relator. All concur.