**STEPHEN AND STEPHEN PROPERTIES, INC., Appellant,**

v.

**STATE TAX COMMISSION of Missouri, Respondent.**

No. 57018.

Supreme Court of Missouri, Division No. 1.

Sept. 10, 1973.

Motion for Rehearing or for Transfer to Court En Banc or for Modification of Court's Opinion Denied Oct. 8, 1973.

Lashly, Caruthers, Rava, Hyndman & Rutherford, William E. Buckley, Albert J. Stephan, Jr., St. Louis, for appellant.

George F. Gunn, Jr., St. Louis County Counselor, Thomas W. Wehrle, Deputy County Counselor, James H. White, Associate County Counselor, Clayton, for respondent.

SEILER, Judge.

This appeal from the action of the circuit court of St. Louis County affirming a decision of the State Tax Commission is here under Sec. 3, Art. V, Mo.Const., V. A.M.S., as involving construction of the revenue laws, specifically, the phrase "true value in money", as appearing in Sec. 137.-115, RSMo 1969, V.A.M.S., with respect to the tax assessment of real property. Appellant is challenging the tax assessment of a new private tennis club. The assessment is based solely on the cost of reproduction of the improvements. Appellant contends that several other factors, which in its opinion depreciate the value of the property, must be considered in arriving at the

"true value in money" of the property. We agree and accordingly reverse and remand.

On December 26, 1967, in anticipation of the construction of a private tennis club, the city of Creve Coeur passed an ordinance granting Creve Coeur Racquet Club a special use permit on land zoned "one acre single family residential". On January 2, 1968, Stephen and Barbara Apted purchased the land on which the permit was issued (15.022 acres of unimproved real estate on Conway Road in Creve Coeur) for $86,500. On March 22, 1968, appellant purchased this land from the Apteds for $86,500.

On April 1, 1968, appellant leased the land to Miss Hulling's Coffee House, Inc. for a 20-year term at $9,000 rent per year, with the additional agreement that Miss Hulling's would become obligated to construct racquet club improvements and to pay all taxes. On June 1, 1968, Miss Hulling's subleased the land to the racquet club, a pro forma corporation, for a term of ten years at an annual rent of $41,000, with the additional agreement that the racquet club would provide $300,000 for construction and pay all taxes.

As of January 1, 1969, the work was finished and the club was in operation. The total cost of land and improvements was $657,176. The facility contained a club house, five indoor courts, nine outdoor courts, parking area, and a swimming pool.

The St. Louis County assessor's office valued the property and improvements at $614,918. Mr. John McDonald, chief appraiser in the St. Louis County assessor's office, testified "The property was appraised by the cost approach to value which considers the cost of reproduction less any depreciation, which wasn't applicable in this case, because it was a new building, plus the improved value of the land". The cost of reproduction of the improvements was determined by classifying various sections of the building according to type of construction and determining a square foot value under the Marshall Stevens Valuation Engineering Service, for a total of $484,160.

Mr. Schneider, real estate appraiser for appellant, testified that the total cost of improvements as of January 1, 1969, was $570,676. In his opinion the cost of the improvements should be reduced by 50% to determine the "true value in money" of the property because of the following factors:

1. The existence of the special use permit, which allowed construction of the improvements subject to various conditions which include: (a) the use of land is for a private racquet club; (b) the food and drink facilities at said club shall be limited to a snack bar with modest seating capacity; (c) no area wide tennis tournaments are permitted; (d) the operation of the club shall be controlled by its members; (e) the hours of operation are limited; and (f) the land is restricted to this singular use.

2. The improvements are designed for the special purpose of a swimming pool and tennis club.

3. The existence of a ten-year lease to a non-profit corporation.

4. The speculative nature of the success of the use for which the property was constructed.

The transcript of hearings before the commission contains the following exchange in reference to Mr. Schneider's testimony on depreciation:

"COMMISSIONER DAVIS: Do you, Mr. Schneider, say that this economic depreciation would be half the value of it in one year's time?

"THE WITNESS: In my opinion, your Honor, it was there the day they laid the last brick, it was there while this was in the planning stage.

" . . .

" . . . In my opinion cost is not true measure of value at all times. Just be-

cause you spent the money, because someone invested the money doesn't always mean it is worth it.

" . . .

"COMMISSIONER DAVIS: I don't think that a private racquet club would build this place with the hopes of selling it in two or three years to make a profit as a private club, I don't think it built it with the purpose of re-selling it at all.

"THE WITNESS: Well, your Honor, as I understand this term true value in money is what would it bring if exposed on the open market, what would you obtain for it. In my opinion, this is all an investory (sic) would pay for this property. . . Now, whether they hold it and they are happy with it I have no way of knowing."

When asked about Mr. Schneider's depreciation of the property by 50%, the appraiser for the St. Louis County assessor replied:

" . . . I personally think this is a special purpose building built for special purpose use by the present owners who are informed businessmen who have demonstrated their astuteness in other ventures, Miss Hulling's venture is quite successful, and in my opinion I can see this venture going on and on and growing, and I would hesitate myself to assign any depreciation for the value in use. I don't believe this building was built for resale, and there are other special properties in St. Louis County that have to be valued at their value in use such as refineries and there is no market for some of these unique buildings. In my opinion, this is one of these unique buildings and we believe the cost approach accurately reflects the value in use to the present owners".

On cross examination the following was stated:

"Q In arriving at your appraisal of the land and improvements, did you give any consideration to the existence of the special use permit which runs in favor of Creve Coeur Racquet Club and the basic zoning on the property which is one acre single family residential, except for Creve Coeur Racquet Club which is entitled to use it for present purposes under the conditions enumerated?

"A At the time of my assigning land value I didn't know that this was special purpose. . . [A]s an appraiser and as a businessman it is my opinion that the officials in Creve Coeur granted special permit use and if the present owners cease to exist that any new owners would enjoy the same use even though it is not spelled out.

"Q That is speculative on your part?

"A It is entirely speculative on my part, that is right.

"Q Did you consider in arriving at your appraisal of land and improvements the fact that the lessee of this property was a not for profit corporation which had no stockholders?

"A It didn't enter into my calculations at all.

"Q How about the functional depreciation of this building, the non-purpose nature of it, did that enter—

"A I believe the building is functionally perfect for its purpose.

" . . .

"Q And I take it from your testimony that you did not consider the zoning on this property as having a depreciating effect on the special use permit under which it was constructed, as having a depreciating effect on its assessment—

"A That is right."

As to the value of the land, appellant's appraiser testified to a value of $90,000 overall. The St. Louis County appraiser, however, valued the land in two parts. The "in use" land which had been improved was valued at 40¢ a square foot, or $101,280. He arrived at this figure by valuing the land the same way he would value commercial land on which similar

improvements were situated, in this case warehouse property, and then discounting the valuation because of the fact that the property was of a more limited use. The balance he appraised at $4,300 per acre, or $29,460, for a total of $130,740 on the land.

The commission made its decision in this case on December 10, 1969. The decision was not accompanied by findings of fact and conclusions of law as required by Sec. 536.090, RSMo 1969, V.A.M.S. On December 30, 1069, appellant filed its petition for review of the commission's decision. The commission did not file its findings of fact and conclusions of law until June 10, 1970. Appellant filed a motion to quash the findings for the reason that they were not prepared until almost six months after the filing of appellant's petition for review after the commission was afforded an opportunity to consider the grounds raised in the petition for review, and therefore were not included in and did not accompany the decision of the commission as required by statute. The circuit court sustained appellant's motion to quash, but in due course affirmed the decision of the commission.

Appellant contends that the commission order is not supported by substantial and competent evidence because the St. Louis County assessor's valuation of the property considered only the cost of reproduction of the property, and failed to take into account all relevant undisputed factors which have a depreciating effect on the property's "true value in money". Secondly, appellant contends that the appraised value of the land is not supported by substantial and competent evidence because of the failure of the commission to take into account the sale price of the land in the recent arm's length transaction between appellant and Mr. and Mrs. Apted.

■ Our scope of review of decisions of administrative agencies is generally limited to a determination of whether the order is supported by "competent and substantial evidence upon the whole record" as provided in Sec. 536.140, Subd. 2, RSMo 1969,

V.A.M.S. However, when the question under review is not a question of fact, but involves a question of law or application of law to fact the court is not limited by this standard. The questions presented on appeal fall into this later category in that they require this court to apply the "true value in money" standard to the facts of this case. The commission order set forth the physical aspects of the property involved and included the following findings:

"This Commission believes that the St. Louis County Assessor recognized the special purpose nature of this property and is of the opinion that while the market for special use property is limited, it must have the same estimated value to any other similar owner with the same use in mind as the use now being made by the present owners. In our opinion that estimated in use value is $614,910.00.

"All special use property, such as that owned by Monsanto Chemical Company or McDonald Douglas Company has been appraised similarly, that is, cost of reproduction plus estimated land value."

The commission concluded that " . . . the evidence adduced by the petitioner herein does not show that the assessed valuation of the property . . . as fixed and determined by the Assessor and the Board of Equalization . . . is capricious, arbitrary, or intentionally discriminatory."

■ A tax assessment, though presumed valid, will not be upheld where it is clear that the assessment does not take into account all factors relevant to a determination of "true value in money". See State ex rel. Kahler v. State Tax Commission, 393 S.W.2d 460 (Mo.1965) and Drey v. State Tax Commission, 345 S.W.2d 228 (Mo.1961).

It was undisputed here that the special use permit limits the use to which present owners can put the property and thus limits its income generating capacity. In ad-

dition the permit limits the field of possible buyers because there is no guarantee the special use permit would pass to subsequent buyers to enable them to put the property to the special use for which it was constructed; the field of buyers might be limited under the use permit to pro forma corporations and even if a buyer could be found, the use permit limits the use to which he could put the property.

It also is undisputed that the property is encumbered by the existence of a ten year lease to a non-profit corporation by which the income of a prospective buyer would be limited to the yearly rental payments of $41,400.

The improvements are fully useful only as a tennis and swimming club. If this property were sold for use for another purpose it is doubtful if the cost of improvements could be recovered. The field of buyers who could put this property to its special use is small. The speculative nature of the success of the use for which this property was designed increases the likelihood that the property would have to be sold to buyers for other than its special purpose use.

■ The St. Louis County tax assessor testified that there was no depreciation of the property, because the property is new. Respondent asserts the term "depreciation" contemplates an event or change of circumstances *after* construction. However, the case law does not support this argument. In the case of Riccardi v. United States Fidelity and Guaranty Co., 434 S. W.2d 737, 741 (Mo.App.1968) the court said: "The word 'depreciation' and the phrase 'depreciation in value' are used and applied in the broader sense of meaning and include any reduction or lessening in value." And in the case of State ex rel. State Highway Commission v. Cone, 338 S.W.2d 22, 27 (Mo.1960) the court said: "Whenever consideration is given to the cost of reproduction as an element in the determination of market value, it is recognized that a proper deduction must be made for depreciation. Depreciation is considered as being of two types; conditions which are purely physical such as those caused by deterioration from wear and tear, and conditions usually referred to as functional depreciation which covers the effect of obsolescence and loss of adaptability. Even changes in style can be a factor in functional depreciation. The factors involved in a particular case often are complex and subtle."

■ Respondent places great emphasis on the specialty nature of the property involved in this case and contends that when considering the "true value in money" of a new and unique building not intended for resale, the cost of reproduction of the property is the only relevant factor. There appear to be no Missouri cases which deal with this point. Respondent cites two cases from other jurisdiction in support of his position, Joseph E. Seagram and Sons, Inc. v. Tax Commission, 18 A. D.2d 109, 238 N.Y.S.2d 228 (1963) and State of Minnesota v. Federal Reserve Bank of Minneapolis, 25 F.Supp. 14 (D. Minn.1938), but upon analysis these cases as well as cases from other jurisdictions support the proposition that even as to specialty property, all relevant factors must be considered in determining its "true value in money" for tax assessment purposes. The case of People ex rel. Bank for Savings in City of New York v. Miller, 84 App.Div. 168, 82 N.Y.S. 621 (1903) involved an appeal from a tax assessment of a savings bank. The challenged assessment was based on the cost of the building, although testimony on both sides put the value of the property much below the cost. In overturning the assessment the court made this statement at 82 N.Y.S. 624:

"While it is proper to give due weight to the element of cost in fixing the value, that should not control against proof showing a less value. It is well known that a building, especially one constructed for a special purpose, is rarely worth on the market what it has cost to erect it." See also, People ex rel. Colgate Inn, Inc. v. As-

sessors of Town of Hamilton, Madison County, 132 Misc. 506, 230 N.Y.S. 134 (Sup.Ct.1928).

■ When the tax commission is presented with undisputed facts alleged to have a depreciating effect on the value of property, it is faced with the resolution of two important issues. First, are the factors relevant to a determination of value? This is a question of law, depending upon construction of what makes up "true value in money" as the phrase appears in Sec. 137.115, supra. Second, if the factors are relevant, as we hold they are in this case, the commission must then decide if they in fact depreciate the value of the property.

Unfortunately this approach was not taken in this case. It is not possible to determine from the commission's findings whether it concluded that the special use permit, etc., were not relevant to determining value or if it determined that these factors in fact had no depreciating effect.

■ Appeal from a tax commission decision is unlike appeal from a judgment in a court tried case where review is de novo and the appellate court may assume that all fact issues on which no findings were made were found in accordance with the result reached (rule 73.01(b), V.A.M.R.). In administrative review, the court is bound by the agency's findings if supported by competent and substantial evidence and its scope of review is limited. For a court to infer findings from the ultimate decision of an administrative agency, defeats this limited review provision, as it allows the court to find both the law and the facts on appeal.

■ Appellant raises a second point, contending the commission's failure to take into account the sale price of the land in an arm's length transaction (the 1968 sale to appellant by Mr. and Mrs. Apted) cause its decision to be arbitrary and capricious and devoid of any support by competent and substantial evidence. It is seen, however, that the dispute is not over the value of the land, but over the increase in value of the land after it had been graded and otherwise improved. The commission was faced with conflicting testimony on the issue, and could properly accept the assessor's valuation over that of appellant's expert, and settle this fact dispute in favor of respondent.

Before disposing of this case, this court feels it necessary to discuss one further point. The facts of this case show that the tax commission did not make its findings until six months after the hearing and decision in the case. The circuit court, in granting the motion to quash, impliedly agreed with petitioner that it was improper for the commission to prepare its findings after being afforded an opportunity to consider the grounds raised in the petition for review.

■ As earlier stated, Sec. 536.090 says "Every decision . . . *shall include or be accompanied by* findings of fact and conclusions of law" (emphasis added). The fact that an administrative agency is not required to serve its findings with its notice of decision, as held in State ex rel. Zimmerman v. Moran, 439 S.W.2d 503, 504 (Mo.1969), does not mean that the agency can postpone making those findings until forced to do so by receiving notice of filing of petition for review. An agency's determination of findings is not a separate function from its decision in a case. The agency's findings of fact and conclusions of law are an essential part of and are the basis for its decision. The two cannot be separated, nor can the agency put the cart before the horse, as was done in this case, by making a decision and then later making findings of fact and conclusions of law which will support that decision.

Five practical reasons have been outlined for the requirement of findings by the Model State Administrative Procedure Act which has been enacted in Missouri. These justifications include: (1) the facilitation of judicial review; (2) preventing

judicial usurpation of administrative functions; (3) to protect against careless or arbitrary action (the requirement of findings, evokes "care on the part of the trial judge in ascertaining the facts." United States v. Forness, 125 F.2d 928, 942 (2nd Cir. 1942) cert. den., Salamanca v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L. Ed. 1764 (1942)); (4) to help parties plan their cases for rehearing and for judicial review; and (5) to keep the agencies within their jurisdiction. Davis, Adm.Law, Vol. 2, Sec. 16.05 (1958).

The third and fourth goals, enumerated above, which are sought to be achieved by the findings requirement are defeated, unless an administrative agency is required to make its findings of fact and conclusions of law as a part of reaching a decision on the merits and at the time thereof.

After granting appellant's motion to quash the tax commission's findings the circuit court affirmed the commission's decision. Apparently the circuit court concluded that a remand to the commission to require findings would be futile at this stage in the proceedings. However, having quashed the commission's findings, the circuit court has no basis to support its affirmation of the commission order. The circuit court was in the position of having either to consider findings which the court itself had quashed, or look at all the evidence before the tax commission and determine if in the court's opinion the commission decision was the correct one. Neither procedure is correct. The circuit court's order affirming the tax commission decision is therefore improper and on remand the commission should consider all relevant factors in the record bearing on the "true value in money" of property in question, and make proper findings of fact and conclusions of law to support its decision.

For the reason set forth above, the decision and order of the circuit court and the tax commission are set aside and the case is remanded to the Circuit Court of St. Louis County for remand to the State Tax Commission for further proceedings on the record not inconsistent herewith.

All of the Judges concur.