**NCR CORPORATION,
Plaintiff-Appellant,**

v.

**STATE TAX COMMISSION OF MISSOURI, City of St. Louis, John O'Shaughnessy, Assessor of the City of St. Louis, Ronald A. Leggett, Collector of Revenue of the City of St. Louis, Defendants-Respondents.**

**No. WD 32205.**

Missouri Court of Appeals,
Western District.

April 20, 1982.

Motion for Rehearing and/or Transfer to the Supreme Court Overruled and Denied June 23, 1982.

Application to Transfer Denied Sept. 13, 1982.

Robert G. Brady, Michael B. McKinnis and George E. Murray, III, St. Louis, for plaintiff-appellant.

Thomas A. Connelly, James J. Wilson and Edward J. Hanlon, St. Louis, for defendants-respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

NCR Corporation appeals from a judgment of the Circuit Court of Cole County, Missouri, affirming a decision of the State Tax Commission which assessed NCR's leased business machines and computers in the City of St. Louis at a valuation of $572,961 for 1976. The Commission's deci-

sion followed a hearing upon an appeal by NCR from a ruling of the City of St. Louis Board of Equalization denying relief from an assessment made by the city assessor. A valuation of $54,409 for other personal property, not under lease, is not disputed.

The assessor for the City of St. Louis valued the leased equipment by use of a gross rent multiplier of 36, and the Commission used the same formula. By this method the gross monthly rental received by NCR for its leased equipment was multiplied by 36. The result was supposed to represent the value of the machines, which was then divided by 3, to reach the assessed valuation for ad valorem tax purposes, § 137.115, RSMo 1978 (Cum.Supp.1981). It is the propriety of the use of this gross rent multiplier which is the issue in this case.

NCR attacked the use of the gross rent multiplier, contending it resulted in excessive assessments on its leased business machines. It presented evidence by two of its employees, Mr. Ungar and Mr. Popoff, which supported the use of a different formula for the valuation of the machines. The formula was explained by Mr. Ungar, Property Tax Administrator at NCR, formerly a supervisor of Personal Property Tax with the Ohio Department of Taxation. The formula which he believed would result in a more nearly correct value than the gross multiplier formula started with the selling price of the new machines as shown by NCR's catalogue, less normal discounts given to customers in the amount of 7 percent; less cost of services supplied to buyers as part of the purchase price, 11 percent; and, finally, less year-by-year depreciation based upon a six-and-a-half-year life for computers and a ten-year life for non-computer equipment.

The formula used by the assessor, and by the Commission, was promulgated by a directive of the Commission dated January 5, 1976, which we have copied in full in the margin.[1] The authority of this directive,

1. The letter containing the directive reads as follows:

January 5, 1976

Dear Assessor and Leased Equipment Representatives:

contained in a letter from the Commission to all assessors, is challenged by NCR. It claims that the formula was arrived at without adequate hearings by the Commission and without sufficient opportunity for equipment leasing taxpayers to be heard, and that the requirements of due process were not met. The conclusion which they urge upon us is that the directive was entitled to no weight as evidence and was not substantial evidence supporting the assessment.

As a result of various meetings and studies conducted by the Missouri State Tax Commission regarding the equitable and uniform assessment of leased equipment, we have chosen a gross multiplier formulae as the method to be used in assessing leased tangible personal property for tax purposes.

This decision is understandably influenced to a certain degree, by the Missouri State Supreme Court ruling in November. After hearing lengthy pro and con arguments, with reference to the gross multiplier method of assessing leased equipment, they stated: "that a gross multiplier formulae, for reasons which we have many times previously expressed, will produce a practical and sensible value of the equipment in question which satisfies us."

We therefore prescribe to you the following gross multiplier formulae: 36 times the monthly rental divided by 3, which arrives at the mandated 33⅓% of the market value of the equipment, which is the assessed value. Adequate allowances have been incorporated in this formulae for items of depreciation (return *of* investment), taxes, maintenance, insurance, management and return *on* investment.

At the end of this correspondence you will find a second method of appraising leased equipment, namely the capitalization of net income before depreciation and taxes which dramatically demonstrates through comparison, the close similarity of these two methods and point out the simplicity of this gross multiplier and yet its accuracy.

Leasing companies are requested to show on their returns the individual leased equipment and the monthly rental applying to each.

It is further suggested that the calculation of 36 times the monthly rental, divided by 3 be shown on the return to be audited by the assessor, which will provide a double check on the calculations and reduce the margin of error which results in additional correspondence and delay.

In selecting this gross multiplier formulae, we are exercising our administrative discretion as provided by the Statutes.

Following you will find figures to substantiate the gross rent multiplier as prescribed by this Commission.

■ We are unable to agree with NCR on this point and find that the proof that the formula was correctly applied (an agreed fact, given the propriety of use of the formula) constituted substantial evidence of the valuation placed upon the property by the assessor and then by the Commission.

The Commission recited in its January 5, 1976 letter that: "In selecting this gross multiplier formular [sic], we are exercising our administrative discretion as provided by

The capitalization of *net* income before taxes and depreciation is a somewhat similar, widely used and accepted method of appraising either real or personal property, predicated on the income producing ability of that property. Simply stated, capitalization is the process of converting *net* income into present value. Saying it another way, capitalization of net income indicates the *present total capital* investment required to produce that same income.

Following is a step by step example of the capitalization of income on a mythical leased item, which shows the close relationship of capitalizing income and/or using the gross rental multiplier we prescribed for assessing leased equipment.

Monthly Rent x 12 = Gross Annual Income

Expenses:

Management
Maintenance       25%
Insurance

Subtracting 25% from Gross = Net Income before taxes and depreciation

Capitalization Rate:

| | | |
|---|---|---|
| Taxes | 1.9% | (State average rate) |
| Depreciation | 14.28% | (7 year life) |
| Return on Inv. | 9.0% | |
| Total Cap. Rate | 25.18% | |

Net − Capitalization Rate = Value
Value x 33⅓% = Assessment

Example: Rent $100 per Mo.

| | | | |
|---|---|---|---|
| 12 x $100 | = | $1200 | Gross |
| 25% of $1200 | = | −300 | Expenses |
| | | $ 900 | Net |

Capitalization Rate  ÷  25.18%
           = $3574   Which rounded
           = 36 times monthly rental

This mailing will become a part of the record as transcribed on the 12th day of December, 1975.

  Respectfully yours,
  STATE TAX COMMISSION OF MISSOURI
  /s/ J. E. Riney, Chairman
  /s/ Don G. Williams, Member
  /s/ Robert F. Love, Member

the statutes." In the particular decision which is under review here, the Commission found that the letter was issued "pursuant to Section 138.235, RSMo 1969)" ... "endorsing" the gross rent multiplier methodology, and also in pursuance of § 138.410. Sec. 138.235.2, RSMo 1978 (Cum.Supp.1981) provides:

> "The Commission shall investigate companies which have tangible personal property for lease or companies which lease tangible personal property, to cause said property to be properly taxed within this state."

Sec. 138.410.1, RSMo 1978, provides that:

> "The Commission shall exercise general supervision over all the assessing officers of this state ..."

In *City of St. Louis v. State Tax Commission*, 505 S.W.2d 75, 81 (Mo.1974), a gross rent multiplier formula adopted by the State Tax Commission—in that case 40 times monthly rental divided by 3—was held to be substantial evidence supporting the Commission's valuation of business machines owned and leased by IBM, arrived at by applying the formula. In that case the court "presumed that the Commission performed its statutory duties and made an appropriate investigation and based the formula upon facts obtained thereby." Id. at 81. In this case we do not have to make such a presumption. There is in the record before us evidence of an investigation, of the collection of data, of statistical studies, and even of Commission meetings attended by various taxpayers in the equipment leasing business. The equipment lessors in those meetings commented upon the subject. We do not have a record of the meetings but we have the testimony of witnesses who were in attendance. The record does not justify appellant's characterization of the Commission's studies and meetings as being "sham and superficial".

■ Appellant claims that due process would require that they be permitted to "present testimony or offer evidence under oath" and "to cross-examine any of the persons presenting their views." It cites for that position Justice Brandeis's concur-

ring opinion in *St. Joseph Stockyards Company v. U. S.*, 298 U.S. 38, 80–82, 56 S.Ct. 720, 738–740, 80 L.Ed. 1033 (1936). We do not find the cited opinion in any way aids appellant. We are cited to no authority which holds that the Commission was required, in promulgating the directive in question, to do any more than it did here in the way of investigation and holding hearings. No judicial or quasi-judicial hearing was required to be held for the adoption of the formula, with the right to cross-examine witnesses, the right to discovery, the right to present testimony under oath, and the like. The absence of such procedure does not invalidate the formula adopted by the Commission.

Appellant draws our attention to the following language in the opinion of the court in *St. Louis v. State Tax Commission*, supra at 81:

> "We do not mean to say, however, that a formula adopted by the Commission is impervious to attack. It would appear that on a hearing before the Board or Commission relevant evidence should be considered which would tend to show that the formula produced an assessment which was either more or less than true value."

This statement is quite correct. It means in our case that the formula is not conclusive and the mechanical application of the formula does not foreclose all further inquiry into the value of the property. The Commission must consider such evidence of the value of the property under consideration as may tend to show that the property's "true value in money", § 137.115, RSMo 1978 (Cum.Supp.1981), is less or more than that produced by the formula. The Commission did consider all the evidence before it, including that adduced by NCR advancing a different and allegedly superior formula.

Notice should be taken of one other criticism by NCR of the Commission formula. It says that the Commission formula makes no allowance for depreciation. The record does not support this allegation. The Commission formula includes a seven-year de-

preciation rate, not too far from NCR's own rate of six and one-half years for non-computer equipment and ten years for computers. Mr. Jackson testified that the actual useful life of the equipment was, according to the studies made of equipment in use, above seven years. "Many of them were as long as 20 years", he said. "In fact, I think the longest was 24 years or something like that".

NCR, in contending for the "new price less depreciation" formula as against the Commission's gross rent multiplier formula, strongly emphasizes the undisputed fact that NCR is a sales-oriented company, that is, that more of its revenues are derived from the sale of business machines than from rentals. There is therefore, it argues, a method by which the value of their equipment may be ascertained, without resort to the gross rent multiplier, and which gives a more reliable indicator of value. Citing two printed publications of the International Association of Assessing Officers, it contends the "new selling price less depreciation" method is superior to the gross rent multiplier method. The cited reports do prefer the former to the latter method, yet they recognize that both are acceptable methods, along with other methods which neither party is advocating. On the other hand, the testimony of witness Lowell Jackson, a deputy assessor of St. Louis and a qualified expert in the field, gave it as his opinion that the gross rental multiplier method achieved the more accurate results. "If a piece of equipment is being used to produce income over a period of time," Jackson testified, "in my opinion that would represent the highest and best use of that equipment; which in my opinion would represent the value." The Commission also had before it its own studies, culminating in the January 5, 1976 directive which has already been mentioned.[2]

NCR argues further that the fact that it does sell much of the same type of equipment that it leases, and that there is therefore an established new price, takes this case out of the *IBM* (*St. Louis v. State Tax Commission*, supra) and *Xerox* (*Xerox Corp. v. State Tax Commission*, 529 S.W.2d 413 (Mo. banc 1975)) cases. It is assumed that the IBM and Xerox machines were not sold but were offered for lease only. In the *IBM* case, the question before the court was only the gross rent multiplier of 40, contended for by the taxpayer, as opposed to the gross rent multiplier of 50 which the assessor has used. In *Xerox Corp. v. State Tax Commission*, supra, however, as in the case before us, the taxpayer had advanced alternate valuation approaches, which it claimed were better than the gross rent multiplier. The court there, as in this case, had before it the propriety of the Commission's decision rejecting Xerox's alternate formulae and accepting instead the gross rent multiplier method. The court held that it was within the administrative discretion of the State Tax Commission to adopt the gross multiplier formula, and held that there was no abuse of discretion on the part of the Commission in applying the gross rent multiplier in preference to the formulae advanced by Xerox. We so hold in the case before us.

Next, NCR attacks the use of the gross rent multiplier as creating an unconstitutional discrimination and unconstitutional sub-classification of property, in violation of Art. X, §§ 3 and 4(a) of the Missouri Constitution and of § 137.015, RSMo 1978. The complaint is based upon the fact that all of the machines are valued at "cost less depreciation" (not further developed), according to testimony of Mr. Jackson, which leased machines are valued by the gross rent multiplier method.

In *Metal Form Corp. v. Leachman*, 599 S.W.2d 922, 927 (Mo. banc 1980) the court said:

"We are persuaded and hold that classification of property for tax purposes, as that term is used in Art. X, § 4(a), means putting property of a certain nature into one class, and other property into a different class and then taxing them differ-

---

2. There is in the record no evidence of a broad market in used machines of the kind we are dealing with here, as there is in used cars, for example.

ently, either by prescribing a different tax rate as to each or by assessing the classes at different percentages of value."

The use of different approaches or methods of arriving at "true value and money" does not constitute an improper discrimination or sub-classification of property. Both methods are calculated, however imperfectly, to lead to true value in money. Having arrived at that value, the same statutory ratio of one-third is applied to fix assessed valuation, and the same tax rate is applied.

NCR cites us to *Sioux City Bridge Co. v. Dakota County*, Neb., 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), which held under the due process and equal protection clauses of the Fourteenth Amendment that if the assessor uniformly assessed property at 55 percent of its value, and then assessed the complaining taxpayer's property at its full value, the complaining taxpayer was entitled to relief even though the statute required full value assessment, if, the court said, the inequity was a result of the "intentional violation of the essential principle of practical uniformity". That case does not support NCR's position.

We hold that the decision of the State Tax Commission was supported by substantial evidence and that the application of the gross rent multiplier of 36 to arrive at the value of the taxpayer's leased business machines was within the administrative discretion of the Commission.

The judgment of the trial court affirming the same is affirmed.

All concur.

## ON MOTION FOR REHEARING

### PER CURIAM:

NCR in its motion for rehearing, among other criticisms of the foregoing opinion, sharply challenges our conclusion that the gross rent multiplier allows for depreciation of the rented machines. It insists that the formula does not allow for depreciation. As a separate identifiable deduction from new value, depreciation does not appear in the gross rent multiplier formula.

The formula does not provide for some uniform and constant rate at which the value of the property declines from year to year. But depreciation—or perhaps it would be better to say the value of the property at the time of the assessment, which value is greater or less because of its age—is reflected in the multiplier used. In fixing the multiplier, as between 36 and some other larger number, depreciation is taken into account, along with all other factors affecting value of depreciable property. Without depreciation, the gross rent multiplier would be higher than 36.

The Commission's directive says: "Adequate allowances have been incorporated in this formulae (sic) for items of depreciation (return *of* investment)..." That the age of the equipment was before the Commission and was considered is borne out by Mr. Jackson's testimony of his collecting that data for the Commission. It is further borne out by the directive's use of the seven-year life in the comparison of the results of the capitalization of income approach (in which the 14.28 percent annual depreciation rate is separately identified), with the results reached by the simpler one-step application of the gross rent multiplier formula.

NCR emphasizes that the gross rent multiplier of 36 results in a value ($1,718,883) roughly equal to the new sale price of comparable equipment of NCR's own manufacture ($1,713,415), whereas the leased equipment is actually of varying ages up to six years. NCR believes that this conclusively shows that depreciation has not been allowed by the formula.

The trouble with NCR's position is that it assumes that the selling price of comparable equipment fixes a ceiling upon the "true value in money" of the leased equipment, which is then bound to reduce from year to year after the machinery is placed upon lease. The Commission, however, was not required to value the leased property by the same method it valued property used by its owner. It was not required to accept as the beginning point and ceiling value the sale price at which NCR would have sold like

equipment.[1]  *See Bornstein v. State Tax Comm'n*, 227 Md. 331, 176 A.2d 859 (1962), where the court said: "We think the contention that reproduction cost is an overall ceiling cannot be supported." 176 A.2d at 862.  *See also Stephen & Stephen Properties, Inc. v. State Tax Comm'n*, 499 S.W.2d 798 (Mo.1973); Annot., 96 A.L.R.2d 661 (1964).

"True value in money" is not necessarily arrived at by comparing two items of property in the single dimension of their physical characteristics.  In the appraisal of property the properties are compared not only by their physical characteristics, but also by their legal situations and their contractual situations, which might enhance or might diminish their respective values. Take, for example, *Stephen & Stephen Properties, Inc. v. State Tax Comm'n*, supra, where the State Tax Commission in considering the value of real estate apparently did not take into account, as value decreasing factors, the fact that certain real property was subject to a special use permit, that it was subject to a ten-year fixed rental lease to a non-profit corporation, and that the improvements were fully useful only as a swimming and tennis club.  (The annual rental was $41,400, as against a value fixed by the State Tax Commission of $614,910.)  The Supreme Court held that

these were "depreciating" factors which must be considered, as against the Tax Commission's position that the valuation could be based upon estimated land value plus cost of reproduction of improvements. In that case, the contractual situation of the property (the lease), its legal situation (the special use permit) and its physical characteristics were held all to enter into the "true value in money" of the property. They were considered in that case to reduce the value of the property, but by the same reasoning they could increase it.  The *Stephen & Stephen* case stands ultimately for the proposition that "*all relevant factors* must be considered in determining [the property's] 'true value in money' for tax assessment purposes." Id. at 803 (emphasis added).  It stands also for the proposition that property may not be viewed in a vacuum, in isolation from all its circumstances. So in this case the equipment is viewed in its legal setting, which includes the leases with their income production.

It is elementary that the amount of rental income from property (whose highest and best use is leasing), bears some relationship to the value of the property.[2]  We cannot say that the gross rental multiplier of 36 adopted by the State Tax Commission applied in the instant case was unreasonable.

1.  The testimony of Commission's expert witness Mr. Jackson was as follows:

Question: Is the Capitalization of Income approach (of which gross rental multiplier approach is a variant-ed), is it a fair statement to say that that approach is designed to assess a piece of equipment by *estimating* what income stream it might produce in future years?

Answer: Yes.

Q.  Such an approach, which is based on an estimation of what income might be produced in future years, isn't that kind of a theoretical type of approach?

A.  Not really.

Q.  It's not theoretical?

A.  No.

Q.  If the income hadn't been earned yet, upon what facets do you base your estimation of the income?

A.  Experience and projection from past experience.

Q.  Is it your testimony today then that if a machine, if there is a selling price or market price established for a piece of equip-

ment, that, in substantial numbers, that a better method to value that equipment would be to estimate what its future income might be in future years rather than the actual price that's been established in the marketplace?

A.  If a piece of equipment is being used to produce income over a period of time, in my opinion that would represent the highest and best use of that equipment; which in my opinion would represent the value.

2.  We are not dealing in this case with a single item of property.  Whether the gross rent multiplier formula would be appropriate in such a case is not before us.  We are dealing with a composite of equipment, of varying ages.  The statute under which the Tax Commission has acted contemplates such a composite, in referring to "companies which lease tangible personal property", § 138.235, RSMo 1978 (Cum. Supp.1981).  An ongoing equipment leasing business would appear to entail a continual process of addition and retirement of machines.

Actually, NCR's position in this case is that its own formula—that is, new cost of like equipment less depreciation at a constant rate—is a superior formula to the gross rent multiplier formula used by the Commission. NCR's case rests upon two legs—the one being the alleged unreasonableness of the Commission formula, and the other being the reasonableness of its own formula.

We have dealt heretofore with the first point, the alleged unreasonableness of the Commission formula. Let us then examine the second leg of NCR's case, namely, the reasonableness of its own formula, which it proposes as the preferred alternative to the Tax Commission formula. Under NCR's formula, the value of the equipment (before division by 3) would be $536,941. The annual rental is $572,892. As a working hypothesis, let us reduce the gross rental by 25 percent for management, maintenance and insurance, to arrive at a net rental, before depreciation. The 25 percent is suggested by the Commission directive. Subtract an additional 15 percent of the original cost of $1,713,415, for annual depreciation. The *net* annual rental would be $172,656.75—a return of 32 percent per annum on NCR's proposed value of $536,941. The State Tax Commission figured in 1976 a fair annual return was 9 percent. On the Commission's valuation of $1,718,883, the annual return would be 10 percent. NCR's claim is unconvincing that its formula achieves more accurate results than the Tax Commission formula.

The other points of the motion for rehearing have been answered in the opinion and do not require amplification.

The motion for rehearing is overruled. The motion to transfer to the Supreme Court is denied.